MARY E. O. McCROHAN v. DANIEL A. McCROHAN

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 83903

MARY E. O. McCROHAN v. DANIEL A. McCROHAN

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 87220-J

Memorandum filed March 12, 1951.

*Benedict M. Holden, Jr.,* of Hartford, for the Plaintiff.

*Nathan Hillman,* of Hartford, for the Defendant.

ALCORN, J.  Two actions have been tried together.  In one the plaintiff wife seeks an equitable order for support and, by amendment, a partition of jointly owned real estate and an ac-

counting of rents. In a cross complaint the defendant seeks a decree that the real estate belongs in its entirety to him. In the second complaint the plaintiff wife seeks a divorce upon the ground of intolerable cruelty, alimony, and custody and support of an adopted daughter.

The plaintiff and defendant were married on June 25, 1925, and went to live in Hartford at 27-29 Hartland Street, which the defendant had purchased in May of that year. They continued to live there until January 3, 1949, when the plaintiff left the defendant.

At the time of the marriage the defendant was earning about $37 a week as a member of the Hartford police force. The plaintiff had done child nursing before her marriage and, shortly thereafter, began to go out by the day to take care of children. In 1928 she took advantage of an opportunity to board and care for two children at home. The parties were childless, but both enjoyed children and, with the defendant's full approval, the plaintiff continued to board children until she left the defendant. Over the years various children were placed in the home by the state and by private organizations and individuals. The parties treated this activity as an independent venture on the plaintiff's part and took steps to keep the expense thereof separate and distinct from their own household expenses, even to the extent that the plaintiff obtained from the defendant receipts for moneys with which she reimbursed him for any expense he was put to properly chargeable to the venture. At the same time, the evidence does not establish that the amounts paid to the plaintiff by agencies which boarded the children with her were more than sufficient to pay for the children's proper maintenance. Certainly the plaintiff has not proved that the amounts thus received were enough to enable her to contribute substantial amounts to the family support or to accumulate funds to invest in real estate.

At the start of the trial, counsel limited the plaintiff's claim for support to an equitable order for future support. The allegations and claims in the complaint would, however, perhaps sustain a claim, if proved, for reimbursement, under § 7308 of the General Statutes, for moneys expended by the plaintiff for the support of the family. *Churchward* v. *Churchward,* 132 Conn. 72, 79. However, as already stated, the plaintiff has not proved expenditures entitling her to such reimbursement.

On July 8, 1940, two lots were purchased in Waterford for $200 and the deed was taken in plaintiff's name. Both parties claim to have paid the purchase price and both claim to have paid for the materials with which the defendant built a house on the land. On January 27, 1947, seven acres of land were purchased in Bloomfield and title was taken in the names of both parties as joint tenants. On February 14, 1947, using a third party as a mediary, conveyances were executed to convey title in both the Hartland Street home and the Waterford property to the plaintiff and the defendant as joint tenants. Prior to these conveyances the parties had adopted a daughter, now fifteen years old, and a son, who is now past his majority. The purpose of the joint tenancies created in 1947 was to provide for survivorship in the event of the death of either party.

It is unnecessary to decide whose money was expended in the purchase or improvement of any of these parcels or in what amount. By the transfers in 1947 the parties obviously intended to consolidate their separate holdings into a uniform joint tenancy status under circumstances confirming the presumption of a gift, one to the other, which the law would attach to the several transactions. Since those conveyances, each party has had an equal undivided ownership in each of the three parcels. *Brady* v. *Brady*, 86 Conn. 199, 207; *Neumann* v. *Neumann*, 134 Conn. 176, 179; *Reynolds* v. *Reynolds*, 121 Conn. 153, 156; *White* v. *Amenta*, 110 Conn. 314, 317; *Ward* v. *Ward*, 59 Conn. 188, 195.

From the date of the marriage until the 1947 conveyances the defendant's conduct toward the plaintiff was not intolerably cruel, nor did it involve any conduct which would justify the plaintiff in living separate and apart from him. In 1945 he had an altercation with the plaintiff's sister which caused strained relations with the plaintiff. In that year the plaintiff left him and visited relatives for a few days, but then she returned, continued to live with him, and later participated in the conveyances already described. Other than this their married career appears to be marked only by arguments over money matters. The children placed in the home were generally happy and contented, and the home was approved by the state as a fit place for children all during this period.

Subsequent to the transfers, altercations became somewhat noisy and frequent. The reason seems to be that the plaintiff wanted to board infants and the defendant was getting to an

age where small children annoyed him. A single incident in the latter part of 1948 was emphasized in the testimony, the plaintiff's claim being that the defendant, in the course of an argument, cornered her in the kitchen and threatened to hit her with a heavy boot and throw her out the window. The defendant's version is that he did not threaten, although he had a shoe in his hand because the argument occurred while he was changing his clothes. Whatever the truth of the matter, the adopted son broke up the argument without any actual physical violence, and no other act or threat of violence is established in the twenty-four years the parties lived together.

The circumstances which will justify a wife in leaving her husband and entitle her to separate support elsewhere, or which, on the other hand, will justify the husband in refraining from furnishing support are a question of fact under the circumstances of each case. *Morris* v. *Morris,* 132 Conn. 188, 192. In general, the husband's duty to provide a home extends not only to the material comforts within his means "but also to freedom from abuse, ill-treatment, and unwarranted interference from other members of the household." *State* v. *Allderige,* 124 Conn. 377, 381. The basis of the action is "that the husband, bound to support his wife, has so conducted himself that she cannot properly be held to be under a duty to receive that support as an incident of cohabitation with him, and hence is entitled to it while living apart from him." *DeRosa* v. *DeRosa,* 129 Conn. 409, 412; *Martin* v. *Martin,* 134 Conn. 354, 357. The conduct of a husband which will justify a wife in leaving him need not amount to that which would entitle her to a divorce upon the ground of intolerable cruelty. *Morris* v. *Morris,* 132 Conn. 188, 193. The conduct of this defendant toward the plaintiff was not such as to entitle her to leave him and claim support elsewhere.

When the plaintiff left the defendant she went to live at the Waterford house. She stayed there until March, 1949, and then moved to her sister's home. She rented the Waterford property at $42.50 per month until May, 1949. Since then she has had no rental from it. Thereafter the defendant received $150 in rent from the property in 1949. During the same year the defendant paid $96.59 in taxes and $90 in mortgage interest on the property. The rent which the defendant received in 1950 from this property is also shown to be less than the expenses.

Since the separation the defendant has received $480 per year rent from the property on Hartland Street but he has had to pay $344 yearly in taxes and $193.86 in mortgage interest, with items for repairs and insurance in addition. There is no income from the Bloomfield land and no expenses thereof are in evidence. The evidence as to the rents received since the separation does not show the plaintiff to be entitled to an accounting.

The evidence does not entitle the plaintiff to a divorce. "To establish intolerable cruelty 'there must not only be proof of acts of cruelty on the part of the offending party but proof that in their cumulative effect upon the other party they are intolerable in the sense of rendering the continuance of the marital relation unbearable.' " *Morse* v. *Morse,* 128 Conn. 138, 139; *Kilpatrick* v. *Kilpatrick,* 123 Conn. 218, 221; *VanGuilder* v. *VanGuilder,* 100 Conn. 1, 3.

The object of § 8231 is to afford each owner of property in joint tenancy a remedy to end such joint ownership. *Johnson* v. *Olmsted,* 49 Conn. 509, 517; *Vail* v. *Hammond,* 60 Conn. 374, 379. These parties own three separate parcels in joint tenancy. Separate ownership under the statute must be accomplished by partition if that is possible and by sale only if partition is impossible. *Johnson* v. *Olmsted,* supra. The details necessary to a clear picture of the three parcels are extremely scant. The plaintiff offered no evidence of their respective values. The defendant, however, valued the Waterford property at $10,000 to $10,500. It is subject to a mortgage on which the present balance is $1500. The defendant values the property at 27-29 Hartland Street, Hartford, at $13,500. It is subject to a mortgage in the present amount of $4400. The value of the Bloomfield property is not fixed even by the defendant. It is assessed for $312 and consists of acreage only.

There is no evidence that, as undeveloped acreage, this last piece cannot fairly be divided according to the equities of the parties. *Kelley* v. *Madden,* 40 Conn. 274, 280. It further appears that the equity in the Waterford property is reasonably worth $9000 and the equity in the Hartland Street property is $9100. The latter was purchased and owned by the defendant before his marriage and has been and is his home. The Waterford property stood originally in the plaintiff's name. After taking into consideration the respective receipts and expenses of the Hartford and Waterford properties since the separation, an equitable partition would appear to be to transfer title in the

Waterford property to the plaintiff, and title in the property on Hartland Street in Hartford to the defendant, with an equal division of the acreage in Bloomfield into two parcels, one to be conveyed to each of the parties.

No suggestion was made at the trial as to the identity of a committee to make a partition. If the parties are able to stipu-late upon this point they may do so, or, in the alternative, each may file with the clerk the name of a nominee for such com-mittee, either course to be taken on or before March 20, next.

Subject to and upon the naming of a committee to make the partition, a decree will enter designating such committee and directing him to execute and submit for the approval of the court conveyances of the respective properties to the plaintiff and the defendant as hereinbefore indicated, and make return of his doings.

A decree may enter dismissing the complaint for a divorce. The issues upon the claims for support and for an accounting are found for the defendant.