CHARLES W. JOHNSON AND OTHERS *vs.* AARON G. OLM-STED AND OTHERS.

The statute (Gen. Statutes, p. 480, sec. 1,) provides that courts of equity may order a partition of real estate held in common, and (sec. 4,) may order a sale " when, in the opinion of the court, it can not be conveniently used by the parties in interest together and a sale will better promote the interests of the owners." Held to mean—when a sale will better promote the interests of the owners than a partition.

Every tenant in common is entitled to a partition, if practicable; if it is not, to a sale.

It is no legal objection to a sale that it will result in a reduced income from the property.

It is no objection to a sale that one of the interests is owned by a wife in fee with a tenancy by the curtesy in the husband. The right of both can be protected by the court in the money which will take the place of their share of the real estate.

CIVIL ACTION, for sale of real estate held in common; brought to the Superior Court in Hartford County, and heard before *Carpenter, J.*

The property was a piece of land on Main and Pearl streets in the city of Hartford, covered with buildings, and was owned by twelve persons, the petitioners owning one hundred and seventeen 144ths and the defendants twenty-seven 144ths. The complaint alleged that partition was impracticable, and that the property could not conveniently be used by the owners together and a sale would better promote their interests. The defendants in their answer denied this and alleged that the property was in good condition and well leased; that the owners derived a larger income from their respective interests in it than they could from the money which would be produced by a sale; that it was increasing in value; and that it was not for the interest of either plaintiffs or defendants that it should be sold; also that one of the defendants was a married woman who owned her share in fee, while her husband, also a defendant, had an interest in her share as a tenant by the curtesy. The court made the following finding of facts.

The property in question has been held and owned in common since 1806. It has always been occupied by tenants, and for the last twenty-five years or more has been managed by Charles W. Johnson, one of the plaintiffs, and before that for a long time was managed by his father. There has never been any difficulty in leasing the property or collecting the rents or managing the same. The average annual net income of the property for the last ten years has been $10,083.04; for the last five years $8,802.72; and for the last three years $7,800.72. All the owners have been satisfied with the management, and there has been no complaint or disagreement in relation thereto. Some of the buildings have been extensively repaired, and, within the last fifteen years, one new building has been erected, all the owners contributing their proportion of the expense. At that time the number of the owners was smaller than at present, and they were all of age, and agreed in writing to share in the expense. Two of the defendants at the trial expressed their willingness to contribute to any further necessary expense for repairs. The shares of all the tenants in common have been obtained by purchase by them or by those under whom they claim, except that of Aaron G. Olmsted, who holds by descent from Aaron G. Olmsted, the last owner in severalty. The managers of the property have reserved a suitable compensation for their services.

The property is now owned in the proportions and by the persons alleged in the complaint, and as there appears. There are three owners, each having one 144th part. Each one of them is well advanced in life, and each one of them has six persons who would, in case of death, intestate, be heirs to the estate. So that if any one of them should die intestate and his share should be equally divided among all the heirs, the number of owners would be proportionally increased and the fractional part owned by each would be one 864th.

Two of the three buildings on the property are old, and will soon require removal for the erection of new buildings.

The plaintiffs desire that the property should be sold.

The defendants are opposed to this sale and mainly for the reasons—(1) that the property cannot at the present time, as they claim, be advantageously sold, and (2) that they know of no way at present in which the avails can be safely invested so as to bring as much income as the property brings. There was evidence before the court, and the court finds, that for some years before bringing this complaint real estate in Hartford was somewhat depressed. There was also evidence that real estate is now rising and it was claimed that in a few years the property could be more advantageously sold; and also it was claimed from the evidence that there would be difficulty in investing the money, if the estate is sold, as safely and profitably as it is now invested. In respect to these last claims the court makes no finding, except that it is found true that there will be some difficulty in loaning the money as safely and profitably as it is now invested. The whole property is worth $75,000 and upwards, and is so situated that it can be sold in three separate parts of nearly equal value. But it is impossible to apart it so that each owner may have his share in severalty.

Henry Talcott, one of the defendants, is the husband of Elizabeth Talcott, one of the owners, who is also a defendant, and they have three living children.

The defendants claim that by a proper construction of the statute authorizing the sale of real estate held in common, the above facts did not make it for the interest of the owners to order a sale; that the interest of the owners which must be found to exist to authorize such sale was a pecuniary interest; and that the statute did not authorize the sale of the interest of Henry Talcott, which is that of a tenant by the curtesy. But the conclusion of the court is, and it is so found, that it is for the interest of the property and of the owners that the property should be sold.

The court, upon these facts, passed a decree ordering a sale of the property, and the defendants brought the record before this court by a motion in error.

*D. C. Calhoun* and *C. E. Perkins*, for the plaintiffs in error.

*First.* The first question in the case is, as to the meaning and construction of the statute (Rev. of 1875, p. 481,) which is as follows:—"Courts of equity may, upon the petition of any person interested, order the sale of any estate real or personal owned by two or more persons, when in the opinion of the court a sale *will better promote the interests of the owners;* and of any real estate in which or any portion of which two or more persons may have *different and distinct* interests, when in the opinion of the court such real estate cannot be conveniently used and occupied by the parties in interest together, and a sale *will better promote the interests of the owners.*" This statute authorizes the sale of three kinds of property: undivided real estate owned by tenants in common, personal property owned by tenants in common, and real estate in which different persons have "distinct interests." In each of these three cases to authorize a sale it must be found that it will *better* promote the *interests* of the owners. Two questions arise as to the construction of this clause: first, as to the meaning of the word "better," and second, as to the meaning of the word "interests."

1. The sentence is incomplete on its face; the sale must better promote the interests of the owners than something else would do, but better than what? Is it better than to have the property continue undivided, or better than to have a partition made? Upon the determination of this question depends the decision of this case. The defendants claim that the meaning is, that the sale must be better for the owners than to have the property remain undivided; and if this is the proper construction the facts found show clearly that no sale should be ordered, while, as it is found that no fair partition can be made so that each owner may have his share in severalty, it will be admitted that a sale is better than an unfair partition. The plaintiffs say that the intention of the legislature was to give power to the court, either to divide property held in common, or to order it to be sold if it was not desirable to have it divided, and

either a partition or a sale could be had in all cases of real estate held in common; which of the two should be adopted depending entirely on the opinion of the court. This power depends entirely upon the statute, and the best way of arriving at the intention of the legislature is to examine the various statutes on the subject. Prior to 1848 there was no power in the court to order a sale of lands held in common. The only remedy, if the owners could not agree to divide, was by a division made by the court. In 1848 the legislature passed an act, the first section of which authorized the Superior Court as a court of equity to order a partition, and the second section authorized a sale "whenever in the opinion of the court a sale will better promote the interests of all parties *than a partition*." This statute clearly gave the power to the court which it is claimed now exists. This extraordinary power, however, lasted only a few years. In 1852 a new act was passed in its place, authorizing a sale "whenever, in the opinion of the court, a sale will better promote *the interests of the parties in interest*." In this act the expression "than a partition" is left out, and the power of the court is placed upon the promotion of the real interests of the parties—a most reasonable and just rule. If this statute had remained exactly so down to the present time, there could hardly be a doubt about its meaning. It is well settled that when the language of a subsequent statute differs from that of a former one on the same subject by the omission of a clause or phrase, such omission is the strongest evidence that a different construction is intended. In 1853 another act was passed, authorizing a sale "whenever, in the opinion of the court, a sale will better promote the interest of all parties than a partition, *and* whenever, in the opinion of the court, the property cannot be conveniently occupied in common." This act by implication repealed the preceding act, which had repealed the act of 1848, under the well-known rule that an act covering the same ground as a former one, but adopting a different and inconsistent rule, repeals such former one; but it was in substance the same as the act of 1852. It used the expres-

sion "than a partition," but limited it by saying that a sale could only be had "where the property could not be conveniently occupied in common." The power of the court to sell what could not be divided was no longer absolute, but was especially restricted to cases where it could not be beneficially used by the owners. It has long been a settled rule, both of law and equity, that a right to partition or actual division is absolute. *Scovill* v. *Kennedy*, 14 Conn., 349, 361. At first the power to sell was made as broad, but it was soon seen that this was unreasonable. Something might be said in favor of one owner in property that could be divided having his share set to him, but when it came to selling out the property of unwilling owners, when it could perfectly well be occupied in common, it was evidently too great and unreasonable an exercise of power to be allowed. In 1858 an act was passed authorizing the sale of personal property held in common, as follows :— " The Superior Court, as a court of equity, may, upon the petition of any person interested, order the sale of any personal estate owned by two or more persons, whenever, in the opinion of the court, a sale will better promote *the inter-ests of the parties in interest.*" The use of this expression here is very important in deciding upon its meaning, as it is the same as that in the present statute, substituting " owners " for " parties in interest." It cannot be claimed here that a sale is to be made when it is better than a partition; for no partition is authorized or possible in an article of personal property. The only possible meaning which the phrase can have here is, that a sale is authorized when it will better promote the interest of the owners than to have the property remain in common; and as it will appear that real and personal property are to be governed by the same rule under the present statute, the inference is unavoidable that the rule applicable to personal property is also to be applied to real estate. In the revision of 1866 (p. 398, secs. 41, 42,) all prior acts were repealed and a new act was passed, as follows :—" *Sec.* 41. The Superior Court, as a court of equity, may, upon the petition of any person inter-

ested, order the sale of any real estate, * * owned by two or more persons, * * whenever, in the opinion of the court, a sale *will better promote the interest of the parties in interest.* *Sec.* 42. The Superior Court, as a court of equity, may, upon the petition of any person interested, order the sale of any personal estate owned by two or more persons, whenever in the opinion of the court a sale *will better promote the interest of the parties in interest.*" Here nothing is said about a sale being better than a partition, or any intimation that such a meaning is intended. The same expression is used as applicable both to real and personal estate, and must have the same construction in both sections. Now in the revision of 1875, it will be observed that estate either real or personal, owned by tenants in common, may be sold whenever it is for the interests of the owners that it should be. The same rule is applicable to both, and the same meaning must be given in each case. It is simply impossible that in one sentence of this kind the real estate may be sold without regard to the real interests of the owners simply because a partition cannot be made, but personal property can be sold only when the best interests of the owners require it. It seems to us that these considerations show conclusively that the proper construction of this section must be as the defendants claim it, and that, to authorize a sale, the facts must show that it is more for the interests of the owners than to remain as they are.

2. The expression "interests of the owners," means pecuniary interest; that is, benefit or advantage. It must be better for the owners in some way to have the property sold, than to have it kept as it is; if a sale would be an injury to the owners, it cannot be for their interests. The fact that property can be more easily managed if owned by one than by several, that there is more difficulty in dividing up the net rents among a large number of owners than among a few, or any other mere matter of convenience, is of no importance whatever, simply because the legislature has not seen fit to make it so, unless the interests of the owners are in some way affected. It is a very great exercise

of authority for the legislature to deprive a person of his interest in land against his will; to have such property sold and oblige the owners to take money which they may be unable to invest or ignorant how to take care of. *Hayden* v. *Denslow,* 27 Conn., 335; *Ford* v. *Kirk,* 41 id., 9. Nothing could justify such an extreme exercise of power, but some necessity involving *actual injury* to the owners; no mere inconvenience or possibility of future injury would be enough. *Potter* v. *Munson,* 40 Conn., 473; *Hartmann* v. *Hartmann,* 59 Ill., 103. It differs materially from a partition. If four persons own a piece of land in common, and one quarter is given to each of them, they are substantially as they were before. The property is the same, the interest is the same; all the change is, that each one owns a divided quarter of the whole instead of an undivided quarter. It can be rented, used or sold to as much advantage, and the increase in its value if in a favorable position would be the same. But in the case of a sale all this is changed. The owners are entirely deprived of their property. Its very nature is changed. A sale is forced perhaps at a time and in a manner most unfavorable to the owners. An investment of perfect safety, paying perhaps ten per cent., and steadily increasing in value, is arbitrarily changed into a definite sum of cash, perhaps owned by minors, women, or persons unaccustomed to investment, and must be again invested at every risk, and even if a safe investment can be found at a very small rate of interest. These are sufficient reasons to warrant a court in supposing that the legislature could not have intended to authorize a sale unless for reasons of necessity, and also for strictly construing any statute granting a power to sell.

*Second.* As to a sale of the estate of a tenant by the curtesy. The statute, though broad in its terms, was not intended to affect all cases of real estate held in common, regardless of the purposes for which it is held, or the rights to be invaded by a sale. Two kinds of property are beyond its grasp.—(1.) Real estate held for public and charitable uses. *Wilson* v. *Peck,* 39 Conn., 54; *Potter* v. *Munson,* 40

id., 473.—(2.) Real estate held for private uses where any owner has such an interest as the law especially protects, as in the case of tenants in tail, tenants in dower, and tenants by the curtesy, lands held by husband and wife, etc. *Cubbage* v. *Franklin*, 62 Misso., 364; *Miller* v. *Miller*, 9 Abb. Prac. R., N. S., 444; *Parks* v. *Siler*, 76 N. Car., 191; *Way* v. *Way*, 42 Conn., 52.

*A. P. Hyde* and *W. W. Hyde*, for defendants in error.

PARDEE, J. No person can be compelled to remain the owner with another of real estate, not even if he become such by his own act; every owner is entitled to the fullest enjoyment of his property, and that can come only through an ownership free from dictation by others as to the manner in which it may be exercised. Therefore the law afforded to every owner with another relief by way of partition, and this regardless alike of the difficulties attending separation and the consequences to his associate. Rights to the use of running water, rights to dig ores, have been declared to be subject to this law. But inasmuch as it might sometimes happen that by partition the property would be practically sacrificed, the statute has opened a way of escape from such a result. It permits a court of equity to order a sale when in its opinion a sale will better promote the interest of the owners.

Therefore since its enactment there have been two modes of relief within the power of the court—partition and sale. Every owner with another is entitled to separate ownership by one of these; by partition first and always, if that is possible; if it is not, then by sale; every petitioner for a sale assuming the burden of proving partition impossible; and if upon such petition the impossibility of partition is proven, the court is as much bound to order a sale as it would have been to order a partition upon a prayer for it and upon proof that it could be conveniently and equitably made. If upon a petition for a sale it is proven both that partition is impossible and that a sale would result in a

diminution of income, the petitioner is not for that reason to be shut up to continued joint ownership; he must have leave to go out of the possible door notwithstanding that diminution; upon such petition the most that can be insisted upon by plaintiff or defendant is that the undeniable right to severalty in ownership shall be secured by the least injurious of the two specified modes.

The statute has been thus interpreted by this court. In *Spencer* v. *Waterman*, 36 Conn., 342, it is said that it permits a sale only "in cases where the interest of all parties concerned would be more promoted by a sale than by a division." In *Ford* v. *Kirk*, 41 Conn., 9, it is said that by the express terms of the statute a sale is warranted only when it "will better promote the interest of the parties in interest, that is, will better promote it than a partition." And a former statute permitted a sale "whenever, in the opinion of the court, a sale will better promote the interest of all parties than a partition, and whenever in the opinion of the court the property cannot be conveniently occupied in common." It is claimed that this statute restricted the power of the court to order a sale to cases where the property could not be beneficially used in joint ownership. But in *Richardson* v. *Monson*, 23 Conn., 94, it is said that it authorized a sale "whenever partition cannot conveniently be made in any other way. * * And indeed, by the principles of the common law, recognized by the statute 31 and 32 Henry VIII., this right of partition enters into the very nature of the title of estates holden in common and is inseparable from them. The only question is how can it best be made? The statute giving the power of sale introduces as we think no new principle; it provides only for an emergency, when a division cannot well be made in any other way."

The fact that one of the defendants is tenant by the curtesy initiate is no bar to an order of sale; he and his wife are made parties and are within the jurisdiction of the court; in them together is the whole of an undivided part, a well-defined and tangible estate; clearly within the reason

and the language of our all-inclusive statute. And, as the money is to stand for the land, the court can make all necessary orders for the protection of his rights, if he should ever become tenant by the curtesy consummate, as well as for the protection of hers.

There is no error in the judgment complained of.

In this opinion the other judges concurred.