LUCY STAKUM BORZENCKI *v.* ESTATE OF
ANTHONY J. STAKUM ET AL.
(11808)

HEALEY, PARSKEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued December 6, 1984—decision released March 5, 1985

*John R. Caruso,* for the appellant (plaintiff).

*Eugene A. Skowronski,* with whom was *William J. St. John, Jr.,* for the appellees (defendants).

ARTHUR H. HEALEY, J. The main issue in this appeal is whether the Superior Court properly ordered a par-

tition by sale of certain real estate located in Oxford in which the parties[1] owned varying fractional interests in their own rights and through the testate estate of Anthony J. Stakum (testator).

The testator, a widower, died on April 11, 1980, a resident of Oxford. His last will and testament was admitted to probate in the Probate Court for the district of Oxford. The residuary clause of the will devised to certain parties interests in three contiguous parcels of land in Oxford comprising in total approximately 105.3 acres. We refer to these parcels, as have the parties, as parcels 1, 2 and 3. Parcel 1 contains approximately 81.8 acres; parcel 2 contains approximately 21.5 acres; and parcel 3 contains approximately 2 acres of land. The interests of the parties in parcels 1 and 3 arise out of ownership acquired by them prior to the testator's death as well as from his estate.[2] Parcel 2 was owned entirely by the testator at the time of his death. Under his will, the devisees of that parcel and the interests devised are:

| | |
|---|---|
| Lucy Stakum Borzencki | 1/3 interest |
| William Stakum | 1/3 interest |
| Linda Stakum Baker | 1/6 interest |
| Janice Stakum | 1/6 interest |

Parcels 1 and 3 consist of approximately 83.8 acres of land[3] in which the testator held an undivided one half

[1] The plaintiff in this action is Lucy Stakum Borzencki, a daughter of the testator Anthony J. Stakum. The defendants are William Stakum, a son of the testator, Linda Stakum Baker and Janice Stakum, granddaughters of the testator, and Ida Stakum, daughter-in-law of the testator.

William Stakum, the testator's son, who was named as executor in his will and qualified as such, is a defendant in his capacity as executor as well as individually.

[2] This is true as to all the parties to this action except the defendant Ida Stakum, the testator's daughter-in-law, who holds a one eighteenth interest acquired by her prior to the death of the testator Anthony J. Stakum, but who was not devised any interest in the real estate by his will.

[3] Parcel 1 is approximately 81.8 acres in size and parcel 3 is approximately 2 acres in size.

interest upon his death. The ownership interests and the interests devised under the testator's will are the following:

| | Interest by Prior Ownership | Interest by Devise from Testator | Total Interest |
|---|---|---|---|
| Lucy Stakum Borzencki | 1/6 | 1/6 | 1/3 |
| William Stakum | 1/6 | 1/6 | 1/3 |
| Linda Stakum Baker | 1/18 | 1/12 | 5/36 |
| Janice Stakum | 1/18 | 1/12 | 5/36 } 1/3 |
| Ida Stakum | 1/18 | --- | 1/18 |

On October 20, 1980, pursuant to General Statutes § 45-247, now § 45-257a,[4] the defendant William

---

[4] General Statutes § 45-257a (formerly § 45-247), entitled "Partition or sale of individual interest in decedent's estate. Notice. Hearing," provides:

"(a) During the settlement of the estate of any peson who died owning an undivided interest in any property not specifically devised or bequeathed, the executor or administrator of the estate and the owner or owners of the major portion of the other interest therein may apply in writing to the court of probate having jurisdiction of the estate to order partition of the same.

"(b) Unless the petition for the partition of such interest in property is signed by all the persons in interest, or the guardians of such of them as are minors, or the conservators of such of them as are incapable persons having conservators, the court shall, following public notice, fully hear the case and make all orders as the interests of the parties and the estate demand. In such case the court shall not order partition unless upon full hearing it appears that the best interests of the estate and of the parties concerned will be promoted thereby.

"(c) If, upon such petition, it is the opinion of the court of probate that a sale will better promote the interests of the owners, or that the property cannot be beneficially divided for the purpose of distribution, it may order the sale of any or all such property in such manner and upon such notice as it deems expedient; but unless the petition for the partition or sale of such interest in property is signed by all the persons in interest, or the guardians of such of them as are minors, or the conservators of such of them as are incapable persons having conservators, the court shall, following public notice, fully hear the case and make all orders as the interests of the parties and the estate demand. In such case the court shall not order sale unless upon full hearing it appears that the best interests of the estate and of the parties concerned will be promoted thereby. An order to sell pursuant to this section shall not be made until the executor, administrator or person designated to sell gives a probate bond to secure the execution

Stakum, both as executor and as an heir, and the defendants Linda Stakum Baker and Ida Stakum,[5] requested permission of the Probate Court for an order of partition by sale of parcels 1 and 3, which were owned by the plaintiff, the defendants and the estate as tenants in common.[6] The plaintiff opposed this motion. On December 20, 1980, after notice and hearing, the Probate Court entered an order authorizing and empowering the executor to sell the real property involved at a private sale. Thereafter, the plaintiff appealed to the Superior Court. Following a two day trial de novo, the Superior Court affirmed the decree

of his trust according to the order of the court and according to law unless the probate court dispenses with the requirement of a probate bond as provided in section 45-240.

"(d) The court may appoint for the purpose of partitioning such property a committee of three disinterested persons, who shall be sworn and shall make a return of their actions to the court according to the order thereof. Such partition, when so made and returned to and accepted by the court, and all orders and decrees relating thereto, shall bind all persons interested therein and their heirs.

"(e) The portion set to the estate of the deceased person shall be treated as if the same had been partitioned in the lifetime of such deceased person by a court of competent jurisdiction.

"(f) If the property so partitioned is real property, a copy of such decree shall be recorded upon the land records of the town in which such land is situated.

"(g) If the name or residence of any party entitled to share in the proceeds of property so sold is unknown to the court and cannot be ascertained, it shall appoint a trustee for the share of such party. Such trustee shall give a probate bond and shall hold such share until demanded by the person or persons entitled thereto."

[5] The defendant Janice Stakum later joined in this request for a sale.

[6] The defendants' brief points out that "[t]he motion for order of sale dated October 20, 1980, concerns only Parcels 1 and 3 which are owned one-half by the estate and one-half by the plaintiff and the defendants which comprise 83.8 acres."

It continues and recites that "Parcel 2 which contains approximately 21.5 acres is owned entirely by the estate and was not a part of said motion. It is the belief of the Executor that it is within his general statutory powers to sell Parcel 2 without the necessity of filing a motion under Section 45-257a of the Connecticut General Statutes. It is the desire and intention of the defendants to sell all three parcels as one unit."

of the Probate Court and ordered a partition by sale. In doing so, the Superior Court concluded that a sale and division of the net proceeds would best promote the interests of the parties. This appeal followed.

On appeal, the plaintiff claims that the trial court erred: (1) in granting a partition by sale under § 45-257a of a 105 acre parcel of land which could be physically divided when, in the plaintiff's view, the defendants failed to prove that a partition by sale would better promote the best interests of the decedent's estate and the other parties concerned; and (2) in granting a partition by sale it failed to consider the public policy of this state favoring the preservation of farmland. We find no error.

In examining the plaintiff's first claim of error, we learn that it is essentially three-fold. First, the trial court, in ordering a partition by sale under § 45-257a, did so in derogation of the settled preference for partition in kind over partition by sale. Second, the 105 acre parcel could have been physically divided. Third, the defendants failed to sustain their burden of proving that partition by sale would better promote the interests of the estate and all the interested parties.

"It has long been the policy of this court, as well as other courts, to favor a partition in kind over a partition by sale." (Citations omitted.) *Delfino* v. *Vealencis,* 181 Conn. 533, 536, 436 A.2d 27 (1980); *Coxe* v. *Coxe,* 2 Conn. App. 543, 550, 481 A.2d 86 (1984). In *Delfino,* we also said that "[s]ince our law has for many years presumed that a partition in kind would be in the best interests of the owners, the burden is on the party requesting a partition by sale to demonstrate that such a sale would better promote the owners' interests." (Citations omitted.) *Delfino* v. *Vealencis,* supra, 538; see *Johnson* v. *Olmsted,* 49 Conn. 509, 517–18 (1882). This presumption in favor of a partition in kind, a

threshold issue upon an application for a partition by sale, remains viable. In order to prevail, the proponents of a partition by sale must demonstrate that two conditions are satisfied: "(1) the physical attributes of the land are such that a partition in kind is impracticable or inequitable; and (2) the interests of the owners would better be promoted by a partition by sale." (Citations omitted.) *Delfino* v. *Vealencis,* supra, 537–38; *Kaiser* v. *Second National Bank,* 123 Conn. 248, 256, 193 A. 761 (1937); *Contaldi* v. *Errichetti,* 79 Conn. 276, 277–78, 64 A. 219 (1906); *Coxe* v. *Coxe,* supra.

The inequity of a near absolute preference for partition in kind under certain circumstances long ago led to statutory enactments permitting partition by sale. *Johnson* v. *Olmsted,* supra, 517. Because "as it might sometimes happen that by partition [in kind] the property would be practically sacrificed, the statute has opened a way of escape from such a result" by permitting a court of equity to order a partition by sale when the court's opinion is that "a sale will better promote the interest of the owners." Id.

The statutory right to partition by sale must be examined in light of the particular statute in effect, its language and historical derivation. *Penfield* v. *Jarvis,* 175 Conn. 463, 466, 399 A.2d 1280 (1978). Our early decisions "dealing with the new statutory remedy of partition by sale emphasized that '[t]he statute giving the power of sale introduces . . . no new principle; it provides only for an emergency, when a division cannot be well made, in any other way.' " (Citations omitted.) Id., 471.

The parties in this case agree that the defendants petitioned the Probate Court for a partition by sale pursuant to § 45-257a and that the plaintiff appealed to the Superior Court from the Probate Court decree approving such a sale. That statute provides, inter alia,

that the Probate Court, after a full hearing "shall . . . make all orders as the interests of the parties and the estate demand. . ." and that partition by sale shall not be ordered "unless . . . it appears that the best interests of the estate and of the parties concerned will be promoted thereby. . . . " General Statutes § 45-257a (b). It further provides that if the Probate Court is of the opinion that a sale "will better promote the interests of the owners, or that the property cannot be beneficially divided for the purpose of distribution, it may order the sale of any or all of such property . . . . " General Statutes § 45-257a (c). That subsection also provides that "unless" the petition is signed by "all the persons in interest" the court, after a full hearing, "shall . . . make all orders as the interests of the parties and the estate demand . . ." and "[i]n such case the court shall not order sale unless . . . it appears that the best interests of the estate and of the parties concerned will be promoted thereby. . . ." Id.

It thus appears that this statute recognizes that "the wisdom of the law's preference for partition in kind"; *Delfino* v. *Vealencis,* supra, 543; may, in a proper case, give way to a partition by sale. In this statutory and decisional context, an order of a partition by sale involves the court's exercise of discretion. See *Kaiser* v. *Second National Bank,* supra, 256; *Johnson* v. *Olmsted,* supra, 517; see also *Novitsky* v. *Novitsky,* 9 Conn. Sup. 136, 137 (1940) (*King, J.*). Section 45-257a, fairly read, gives the court the discretion to order a partition by sale upon finding, in a given case, that it is preferable to a partition in kind.

In the plaintiff's appeal from the Probate Court, the Superior Court held a trial de novo. See *Thomas* v. *Arafeh,* 174 Conn. 464, 466–68, 391 A.2d 133 (1978); *Prince* v. *Sheffield,* 158 Conn. 286, 299, 259 A.2d 621 (1969). In that trial, the parties pressed their claims

concerning the partition of the 105.37 acres. We will dispose of this case on the theory on which it was tried and on which the trial court decided it. *Fuessenich* v. *DiNardo,* 195 Conn. 144, 151, 487 A.2d 514 (1985); *Machiz* v. *Homer Harmon, Inc.,* 146 Conn. 523, 525, 152 A.2d 629 (1959). Expert and other testimony was adduced concerning the land, and the trial court was presented with questions of credibility concerning that testimony. In its memorandum of decision, the trial court said, inter alia, that "[t]he better, weightier and more persuasive evidence leads to the determination that the property in issue should be sold rather than partitioned. All the credible evidence mandates this conclusion . . . [and] it is abundantly clear that the property does not lend itself to a partition. A sale and division of the net proceeds will best promote the interests of the parties." This decision was not clearly erroneous. Practice Book § 3060D.

There was evidence before the trial court of the following: The 105 acre tract is T-shaped and thus is irregular in shape; this limits the building area. Used primarily as a dairy farm since before 1926 until the testator died in 1980, the entire tract is located in an industrial zone. A portion of the tract abuts two country highways, Jack's Hill Road on the south and North Larkey Road on the west. A farmhouse, barn and outbuildings are located on the southerly portion of the tract fronting on Jack's Hill Road. There are no other improvements on the tract. The ideal access to the tract is on Jack's Hill Road, on which it has a frontage of 1400 feet more or less. From an aesthetic perspective, the best view is from that portion that abuts Jack's Hill Road in the area of the farmhouse and the surrounding pastureland. This area would be "the absolute best and prime building site" for an industrial or corporate user. Topographically, the property is mostly high with sloping contours to the rear with a fairly flat area close

to Jack's Hill Road. Halfway back through the property, the land drops off "pretty fast, picks up a little bit then goes over to the [Oxford] landfill." An industrial water line is already in Jack's Hill Road along the entire frontage of the tract on that highway. There are no city sewers "in this area."

The plaintiff, who was fifty-six years old at the time of the trial, was born in the farmhouse on the tract where she lived and worked until her marriage to Carl Borzencki when she was twenty-one years old. She has not lived on the tract since that time although she and her husband continued to help her parents regularly on the farm. She was employed by Uniroyal for many years but is now retired and has been receiving social security benefits for total disability since February, 1971. She has had no other employment since 1971. Her husband was seventy years of age at the time of trial and is retired after about thirty-eight years of employment at Uniroyal. Both the plaintiff and her husband maintained that they have the experience and capability to run the farm.

The plaintiff wants to receive her share of her father's estate as land so that she may continue it as a farm, and she does not care what the others do with their share. The only land she wants is that on which the house and barns are located, with at least part of the frontage on Jack's Hill Road.[7] One of the suggestions in her post-trial brief was that, while her one-third interest would be 38.9 acres, the court might consider that she might take less acreage, i.e., 25 acres, thus leaving 80 acres for sale as industrial land.

---

[7] She testified that to operate a farm there she would "not necessarily" need all the approximately 1400 foot frontage on Jack's Hill Road. Her son owns a rear piece, about four acres in size, that abuts parcels 1 and 2 and has access to Jack's Hill Road.

There was expert testimony that the best and prime building site for corporate or industrial use would be right on Jack's Hill Road.

On the other hand, the defendants want to sell the entire 105 acres as a unit to an industrial or corporate user. They produced evidence from a number of witnesses, including experts, directed to this end.[8] Their evidence included the following: The 105 acre tract is located in an area of Oxford that has been specially designated for industrial development. The industrial designation of this tract is reflected in its zoning as industrial, its inclusion in the Oxford economic development policy plan for the area which projects an industrial corridor, and its relation to the development of the Oxford airport development plan. Basically, two factors define the Oxford industrial corridor: (1) the industrial water line that has been established in the town; and (2) "the exist[ence] of roads there." The water line runs the length of the frontage of the tract on Jack's Hill Road. Jack's Hill Road, Christian Street and the access road to the Oxford airport constitute the main artery from the major highways, I-84 and 67, to the Oxford industrial area. The tract itself is located about three and one-half miles from the I-84 exit. It is situated in an area where towns are able to give certain tax advantages because of the "high unemployment" rate in the Waterbury-Oxford area.

There was testimony from several witnesses that the highest and best use of the tract would be for a corporate headquarters, research and development, industrial or manufacturing purposes for a single user. That, however, does not mean that the entire tract is readily amenable to building.[9] As already pointed out, the

---

[8] These witnesses included two commercial and industrial real estate brokers, a civil engineer and land surveyor, the industrial development agent for the area involved employed by the Connecticut department of economic development, the town planner for Oxford and the chairman of the Oxford inland wetlands commission.

[9] One of the experts, a civil engineer who was also a land surveyor, testified that buffers, wetlands, sewers and roads "would take up about 60 of the 105 acres." He opined that "from an engineering standpoint" one user

tract is irregularly shaped and this limits the building area. The tract contains approximately 25 acres of wetlands, located in the middle of the property. There is "substantial ledge under that property," which exists in the middle, in the rear and "even up to the front."[10] The amount of ledge would comprise the rear third of the property, "maybe 30 acres." In order to develop this tract for a corporate or industrial user, one would have to take out about fifteen acres for a 100 foot buffer zone around the tract required by zoning, another ten to fifteen acres to be used up by roads, and anywhere from one to five acres for on-site sewage disposal.[11]

The plaintiff claims that the trial court did not consider the subject of a partition in kind; we reject this argument. Not only does what we have referred to in the trial court's memorandum of decision disprove this, but our examination of the trial transcript reinforces our conclusion. Much evidence was offered regarding the impracticality of a partition in kind, and the trial court itself inquired concerning it.

A number of the experts produced by the defendants agreed on the desirability of the use of the tract by a single user or its sale as a single unit. The size of the tract is particularly attractive to a potential corporate user, which would want to have as much control of the site as possible including the entire frontage on Jack's Hill Road. The factor of control includes the considerations of noise, pollution, traffic and proximity uses. Such a user is generally willing to pay a "premium

would make the best use of the tract, but he foresaw "problems and tremendous development expense to try to break it up into parcels." To do so would require "extensive road systems with the ledge conditions" and it would be very expensive.

[10] One expert opined that ledge would cover "a good third of the remaining land. Towards the rear."

[11] The civil engineering expert testified that approximately twenty-five acres of the tract were wetlands. This was a factor to be considered in developing the tract.

above the normal going price for real estate" for an ideal site after an evaluation of such things as access, topography, aesthetic quality, view, soil conditions and other factors. The preferred site for a large corporate user is about 100 acres or more. This 105 acre tract is one of the few of that size on the I-84 corridor between Danbury and Waterbury. There are no other tracts approximately 100 acres in size along that corridor from Danbury east to Oxford and Middlebury that also have a water line as does the Stakum property. The availability of water is a significant factor in a prospective purchase for corporate research or development or an industrial use.

Two written appraisals in evidence gave opinions of the value of the 105.37 acre tract. One valued the tract at $887,000 for an average price of $8,417.95 per acre, while the other put its value at $1,083,000 for an average price of $10,278.06 per acre. In addition, an expert, who was an industrial commercial real estate broker, stated his opinion of "gross price" as approximately $15,000 per acre for industrial or corporate type use by a single user.

The prime building site for an industrial or corporate user would be "right on Jack's Hill Road." "The front portion that faces Jack's Hill Road [for] about 1400 [feet] is a very desirable piece of property." The civil engineering expert maintained that there were two sites on the tract that would be appropriate as a building site for a single user corporate developer. One was that corner of the tract on the Jack's Hill Road side generally in the area of the farmhouse and farm buildings and the other was towards the rear. The "preferred site" would be the former because of its closeness to the access road and to the "utility." Because of its high elevation, the site on Jack's Hill Road would impact favorably on storm drainage and subsurface sewage systems. The rear building site, how-

ever, would involve higher construction and mainte-
nance costs because it was farther away from the access
road and utilities. A valley had to be crossed to get to
the rear site, which might create grading problems, and
also the ledge there presented difficulties.

In pressing their respective claims for a partition in
kind or by a sale, the parties adduced evidence not only
of the physical amenability of this tract to a partition
in kind, but also of the effect of separating the land
sought by the plaintiff from the remaining portion.
Again, in resolving conflicting claims, the trial court
had evidence it could credit that amply supported its
decision. For example, one expert maintained that if
the front third was removed from the property along
Jack's Hill Road, as had earlier been discussed by the
plaintiff's expert, then the value of the remainder would
be "substantially diminished" and by that he meant by
"at least 50 to 60 percent." Another expert was asked
for his opinion on the value of the remaining property
"if *a portion* of the property which fronts on Jack's Hill
Road and also that contain [sic] the house and barns
were carved out of the Stakum property." (Emphasis
added.) He replied that to do so would "greatly dimin-
ish" the value of the rest of the property. In addition,
he agreed with an earlier expert that the value of the
rear property would be diminished "by about 50%" if
thirty to thirty-five acres in the front where the farm-
house, barns and surrounding acreage were located
were taken out of the tract.

While we recognize that much evidence was adduced
that concerned the economic consequences to the par-
ties of a partition in kind or by sale, and particularly
concerning the desirability of a sale, we conclude that
the court did fairly consider both under the applicable
law. We are aware, as was the trial court, that the mere
fact that the majority interest or the majority in num-
bers may request a partition by sale as opposed to one

in kind is not controlling. See *Lyon* v. *Wilcox,* 98 Conn. 393, 395–96, 119 A. 361 (1923); see also *Delfino* v. *Vealencis,* 181 Conn. 533, 539, 436 A.2d 27 (1980). Only recently, we noted that "[d]ue to the frequent impracticality inherent in actual division . . . all states, except Maine, have, by statute, expanded the right to partition to permit a sale . . . under certain circumstances." *Penfield* v. *Jarvis,* supra, 470–71; see *Libby* v. *Lorrain,* 430 A.2d 37, 39 (Me. 1981). The "impracticality" of a division in kind is closely intertwined under § 45-257a with the factor of the "best interests of the parties." There cannot be said to be a right to a partition in kind unless such actual division can be ordered consistent with the best interests of all the owners. *Contaldi* v. *Errichetti,* 79 Conn. 276, 277–78, 64 A. 219 (1906). The interest of the decedent's estate must also be considered.[12] "It is the interests of all of the tenants in common that the court must consider; see *Lyon* v. *Wilcox,* 98 Conn. 393, 395–96, 119 A. 361 (1923); 59 Am. Jur. 2d, Partition § 118, p. 865; and not merely the economic gain of one tenant, or a group of tenants." *Delfino* v. *Vealencis,* supra, 543.[13]

---

[12] Anthony J. Stakum died on April 11, 1980, and his estate has been in probate since shortly thereafter. At oral argument, we were told that none of the heirs has received any cash from the estate. There are unpaid estate liabilities, as of two years ago, amounting to $126,000. The plaintiff maintains in her brief that if one-third of the property is retained as farmland instead of industrial land the federal estate taxes will be reduced to $13,000 from $80,000. The defendants' brief indicates that there are liquid assets of approximately $33,000. None of the parties live in the farmhouse, which is apparently unoccupied. One of the written appraisals states that the property "is currently improved with an obsolete farm single family dwelling, as well as a small complex of old and obsolete farm buildings." The plaintiff herself admits that the pieces of farm equipment on the premises are quite old, dating back to the 1940s and 1950s.

[13] The plaintiff places great reliance on *Delfino* v. *Vealencis,* 181 Conn. 533, 436 A.2d 27 (1980), as providing a basis for overruling the trial court. Pointing to the preference for partition in kind and contending that a sale should be ordered only in clear cases, she argues that the defendants have not sustained their burden of proving that a sale is warranted under the criteria referred to in *Delfino.* Maintaining that a partition in kind should

The trial court correctly applied the statutory considerations under § 45-257a to the credible evidence in this case. The defendants proved that this tract could not be beneficially divided, and the trial court correctly so determined. There is little doubt on this record that the economic consequences to *all* the owners played a significant part in this contest of a partition in kind as against a partition by sale. Even in a case where a partition in kind is "physically practicable," a court should weigh the consequences of such a partition, as against a partition by sale, in terms of promoting the interests of *all* the owners. Long ago, in speaking of

have been ordered, she contends that, although the economic gain may be greater with a sale, the defendants have not demonstrated that a sale would better promote the best interests of all the parties including the decedent's estate.

The plaintiff's reliance on *Delfino* as pivotal is misplaced. We regard the legal principles propounded in *Delfino* as sound, but *Delfino* and the case at bar are significantly distinguishable on their facts. Although different statutes, i.e., General Statutes §§ 52-495, 52-500, were involved in that case than are involved here, we do not deem that dissimilarity as focal. The statute in this case, General Statutes § 45-257a, concerns the probate administration of decedent estates and does require a consideration of factors not found in the *Delfino* case. These include the administration of the estate itself, administration expenses including federal estate taxes and the fact that the parties entitled to possession have not had and do not have possession.

On the facts, the two cases are distinguishable. In *Delfino,* there were two owners; here there are a larger number. In *Delfino,* the tract of 20.5 acres was located in an urban setting and was topographically level unlike this Oxford tract of 105 acres in a rural area with varying topography. In *Delfino,* unlike this case, both the plaintiff and the defendant were in possession. In that case, the plaintiff, who sought a sale, proposed, upon partition, to develop the property into forty-five residential building lots which is not the stated purpose of this plaintiff. In *Delfino,* the defendant, who favored a partition in kind, lived in the dwelling on a portion of the land and operated her long established rubbish and removal business from there. In the present case, none of the parties resides on the tract involved and no ongoing farming or business operation exists there. In *Delfino,* the portion which the defendant wanted to be set out to her was approximately one acre in size out of a parcel about 20.5 acres in size. In this case, the plaintiff sought, as her share, the farmhouse, outbuildings and acreage that fronted Jack's Hill Road and a much larger portion of the land involved.

a statute permitting partition by sale, this court decided that such a statute "does not profess to deprive any one of any interest in his property, but only to afford a reasonable remedy for its enjoyment, by partition." *Richardson* v. *Monson,* 23 Conn. 94, 97 (1854); see *Delfino* v. *Vealencis,* supra, 537. We note that § 45-257a, where applicable, is remedial. Statutes giving the right to partition are remedial and should be liberally construed. 4 Thompson, Real Property (1979 Repl.) § 1822, p. 282; 68 C.J.S., Partitions § 21, p. 35.

Finally, we turn to the plaintiff's claim that the trial court ordered a sale without considering the strong public policy which favors the preservation of farmland in this state. See General Statues § 12-107a.[14] The only public policy relevant to the present case, however, was that expressed by the legislature in the partition statute, § 45-257a. Accordingly, we consider this claim to be without merit.

There is no error.

In this opinion the other judges concurred.

---

[14] General Statutes § 12-107a, entitled "Declaration of policy," provides: "It is hereby declared (a) that it is in the public interest to encourage the preservation of farm land, forest land and open space land in order to maintain a readily available source of food and farm products close to the metropolitan areas of the state, to conserve the state's natural resources and to provide for the welfare and happiness of the inhabitants of the state, (b) that it is in the public interest to prevent the forced conversion of farm land, forest land and open space land to more intensive uses as the result of economic pressures caused by the assessment thereof for purposes of property taxation at values incompatible with their preservation as such farm land, forest land and open space land, and (c) that the necessity in the public interest of the enactment of the provisions of sections 7-131c and 12-107b to 12-107e, inclusive, is a matter of legislative determination."