[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This partition action was tried to the court on December 12, 2002. Thereafter, pursuant to a briefing schedule, the parties submitted post-trial memoranda, the last dated February 13, 2003. After considering the evidence and the arguments, the court issues this memorandum of decision.
 I. Background
The plaintiff, Marcia Y. Sung, commenced this matter by her complaint, dated March 14, 2002. She claims that she and her sister, defendant Phyllis M. Grover (Phyllis Grover), as tenants in common, are the owners of certain real property located in East Granby, Connecticut, described Schedule A, annexed to the complaint. She also alleges that she, Phyllis Grover, and defendant Donald E. Grover (Donald Grover) are the owners, as tenants in common, of property conveyed by Phyllis Grover to Phyllis Grover and Donald Grover, as described in Schedule B to the complaint. Sung claims that Sung "has an undivided 14/15 interest in the property and the defendant co-owners, husband and wife, collectively have an undivided 1/15 interest therein." Complaint, ¶ 3. Sung seeks a partition of the real estate, according to the respective rights of the co-owners, by sale of the premises and a division of the proceeds.
The Grovers each filed a pro se appearance in this action. In their answers to the complaint, they plead that they disagree with Sung's allegations. At trial, all parties were present in court.[1]
 II. Facts
The court finds the following facts and credits the following evidence, except as noted. Doris Cowles, also known as Doris Y. Cowles, the mother of Sung and Phyllis Grover, died on November 27, 1977. On June 3, 1981, a certificate of distribution[2] issued by the Probate Court for the district of East Granby on May 6, 1981 was recorded in the East CT Page 4447-aq Granby land records. See Plaintiff's Exhibit 1 (certificate). The certificate provided that the estate of Doris Cowles had been duly settled and a distribution therefrom was made of certain land described in the certificate (hereinafter the "property").[3] The property was identified as being situated on the easterly side of Connecticut Route #187 (also known as South Main Street) and the northerly side of Spoonville Road, and bounded and described as specifically set forth. The description further states that the property is shown as a 15.3 acre parcel, more or less, on a July 1975 map depicting the property of the estate of Albert P. Cowles, prepared by the office of Sanderson Washburn of Simsbury, Connecticut, which is also on file with the Town Clerk of East Granby. See Complaint, Schedule A, and Plaintiff's Exhibit 1.
The property is also depicted on a map entitled "Final Subdivision Plan Property of Estate of Doris Y. Cowles Spoonville Road East Granby, Connecticut," dated July 1981. See Plaintiff's Exhibit 3 (hereinafter the "1981 map"). This map is discussed further below.
The certificate also provided that undivided interests in the property were distributed as follows: to Robert C. Cowles (Robert Cowles), 41/60; to Phyllis Grover, 4/60; and to Sung 15/60. Thus, from the time that the property was distributed, Phyllis Grover owned an undivided 1/15 interest in it. While Phyllis Grover testified that she was unfamiliar with the certificate, Donald Grover acknowledged his familiarity with it and stated that he had "no objection" to it. See Transcript of trial, p. 53 ("Tr., p. _____").
At some time in 1981, prior to the issuance of the certificate, several of the children of Doris Cowles met to discuss how her property ought to be divided. At that meeting, Phyllis Grover expressed her preference to receive a parcel of land located immediately to the south of that which she and Donald Grover own (and where they reside) on Old County Highway, and which was part of the 15.3 acres which was later described in the certificate (hereinafter the "one acre parcel"). It is unclear whether or not Sung was present at the meeting. Phyllis Grover does not recall whether or not Sung was there.[4]
In June 1986, although she did not own an undivided interest therein, Phyllis Grover executed a quitclaim deed of the one-acre parcel to herself and Donald Grover, wherein it was described as "Property of Phyllis M. Grover, Robert C. Cowles Marcia Y. Sung to be conveyed to Donald E. Phyllis M. Grover." See Defendants' Exhibit E. This deed was not recorded until more than fifteen years later, on March 5, 2002, presumably in anticipation of the commencement of the present CT Page 4447-ar action.[5] In July 1986, the Grovers and Sung discussed and exchanged correspondence concerning the one-acre parcel sought by Phyllis Grover. The Grovers asked Robert Cowles to sign a quitclaim deed conveying it. He signed it and forwarded it to the Grovers. See Defendants' Exhibit B. Donald Grover called Sung to tell her that he was sending to her for execution by her a deed "for the one acre next to our property." See Defendants' Exhibit C. Sung declined to sign the deed. See Defendants' Exhibit C.
Subsequently, Robert Cowles sold his undivided 41/60 interest in the property to Sung, by quitclaim deed dated May 13, 1987, and recorded on May 18, 1987 in the East Granby land records. See Plaintiff's Exhibit 2. As a result of that conveyance, Sung owns an undivided 56/60 or 14/15 of the property. See Plaintiff's Exhibit 2.
In June 1987, Sung's husband, Phillip Sung, proposed to buy the Grovers' interest in the property so that Sung could sell her interest. In a note made by Donald Grover, he wrote that the Sungs could not sell "unless we sold him the one acre on the hill next to our property." See Defendants' Exhibit C.[6] Alternatively, Phillip Sung proposed that the Grovers buy out the Sungs' interest and "have it all." See Defendants' Exhibit C. Again, no agreement was reached.
The evidence also reflects that since 1988, the Grovers annually have paid their share of the real estate taxes on the property. See Defendants' Exhibit G. These payments have ranged between $22.83 (in 1988) and $102.64 (in 2002) per year. See Defendants' Exhibit G. Additional references to the facts are set forth below.
 III. Discussion
"The right to partition is well settled and its history has been documented thoroughly . . . The right to partition has long been regarded as an absolute right, and the difficulty involved in partitioning property and the inconvenience to other tenants are not grounds for denying the remedy. No person can be compelled to remain the owner with another of real estate, not even if he become[s] such by his own act; every owner is entitled to the fullest enjoyment of his property, and that can come only through an ownership free from dictation by others as to the manner in which it may be exercised. Therefore the law afford[s] to every owner with another relief by way of partition . . . Through the right to partition, it was intended that the undivided possession should be severed, and that each person having the right to be in possession of the whole property should exchange that right for one more exclusive in its nature, whereby, during the continuance of his estate, he should be CT Page 4447-as entitled to the sole use and enjoyment of some specific [portion]." (Citation omitted and internal quotation marks omitted.) Fernandes v.Rodriquez, 255 Conn. 47, 55-56, 761 A.2d 1283 (2000).
While there is a preference for partition in kind, our Supreme Court has noted the "inequity" in making such a preference "near absolute."Borzencki v. Estate of Stakum, 195 Conn. 368, 373, 489 A.2d 341 (1985). Our statutes provide "a way of escape from such a result." (Internal quotation marks omitted.) Id.
"General Statutes 52-495[7] confers an absolute right of partition upon any person holding real property as a tenant in common with others . . . In those cases where the court finds that a sale of the property would better promote the interests of the owners, the court may order such a sale. General Statutes 52-500[8] . . . This jurisdiction has long favored partition in kind, or physical division, over partition by sale . . . Because we presume that partition in kind is in the best interests of the owners, the burden of proof rests on the party seeking a sale to demonstrate that it is the better remedy . . . This burden may be carried by satisfying two conditions: (1) the physical attributes of the property make partition in kind impracticable or inequitable; and (2) the interests of the owners would better be promoted by partition by sale . . . A plaintiff in an action for partition seeks to sever or dissolve involuntary joint ownership in real property. In furtherance of that objective, a court is limited to rendering a judgment of either partition in kind or by sale of the real property . . . thus terminating the ownership relationship between the parties." (Citations omitted and footnotes omitted.) Wilcox v. Willard Shopping Center Associates,208 Conn. 318, 325-26, 544 A.2d 1207 (1988).
"The presumption that partition in kind is in the best interests of the owners is, at least in part, founded on the premise that a sale of one's property without his consent is an extreme exercise of power warranted only in clear cases." (Internal quotation marks omitted.) Fernandes v.Rodriguez, supra, 255 Conn. 56-57. Accordingly, the trial court is directed to "first consider the practicability of physically partitioning the property in question." Id., 59.
"[T]he mere fact that the majority interest or the majority in numbers may request a partition by sale as opposed to one in kind is not controlling." Borzencki v. Estate of Stakum, supra, 195 Conn. 380-81. The court noted also "the frequent impracticality inherent in actual division." (Internal quotation marks omitted.) Id., 381. "Even in a case where a partition in kind is `physically practicable,' a court should weigh the consequences of such a partition, as against a partition by CT Page 4447-at sale, in terms of promoting the interests of all the owners. Long ago, in speaking of a statute permitting partition by sale, this court decided that such a statute does not profess to deprive any one of any interest in his property, but only to afford a reasonable remedy for its enjoyment, by partition." (Internal quotation marks omitted.) Id., 382.
If, in its discretion, the court orders a sale, it may also, in its discretion, accept or reject a proposed sale. See Fernandes v.Rodriquez, supra. "The issue of the appropriate distribution of the proceeds of any sale is thereafter to be considered." Id.
With these principles in mind, the court turns to the issues presented here. In view of the evidence presented by the Grovers concerning their desire to and efforts spent in attempting to obtain, as an undivided share of the property, the one-acre parcel located immediately to the south of that which they own, it is important to note what this case is not about. This is not a quiet title action, in which a resolution of a dispute about title is sought. See Cavanaugh v. Newtown Bridle LandsAssoc., Inc., 261 Conn. 464, 803 A.2d 305 (2002).
Likewise, this is not a will contest involving a challenge to the bequests made by Doris Cowles, nor is it a probate appeal. See GreenwichPutnam Trust Co. v. Connecticut, 177 Conn. 326, 416 A.2d 1200 (1979); General Statutes § 45a-434. The time for an appeal from the probate court's actions has long since expired. See General Statutes §§ 45a-186
and 45a-187. As noted, neither of the Grovers challenges the certificate by which the property was distributed.
Sung and Phyllis Grover (and Robert Cowles) received interests in the property, as tenants in common, in 1981. As noted, in 1986 Sung declined to sign a deed in which the one-acre parcel would have been conveyed to the Grovers. Subsequently, in 1987, Robert Cowles sold his 41/60 interest in the property (including his interest in the one-acre parcel) to Sung. Sung and the Grovers never reached agreement as to the one-acre parcel. The remedy of partition exists for the very reason that persons who have common interests in property cannot always reach agreement among themselves as to it.
The evidence before the court demonstrates, as a matter of law, that as an owner in common with Phyllis Grover of the property in question, Sung is entitled to a partition thereof. As directed by our Supreme Court, this court first considers whether to order partition in kind.
The property is irregular in configuration. See Plaintiff's Exhibit 3.[9] All of the property is located in an R-20 and CT Page 4447-au R-30 or residential zone. See Harris v. Zoning Commission,259 Conn. 402, 411, 788 A.2d 1239 (2002). As noted, a portion of the property is contiguous to the land owned by the Grovers, and at which they reside, on Old County Highway. Substantial portions of the property consist of wetlands, including a swamp and a stream. These portions do not consist of land which is buildable. In his testimony, Donald Grover agreed that a portion of the property consists of wetlands. See Tr., p. 61.
In contrast, the area in which the one-acre parcel is located, south of the Grovers' property, is the one of the most valuable parts of the property. It is situated on a plateau or hill, making it higher than other parts of the property. It has a better view as well.[10] While, according to Donald Grover, the one-acre parcel consists of "solid rock," he conceded that it was a "buildable" area. See Tr., p. 50. Indeed, he agreed that his concern, "from day one," is that someone will build there. See Tr., pp. 60-61. In addition, he stated that he wanted to protect the view from his residence. See Tr., p. 60. The one-acre parcel is marketable as a buildable portion of the property, in contrast to other parts thereof. Thus, it could be sold for residential development.
Understandably, the Grovers want the one-acre parcel as a way to protect their privacy and the view from their residence, at which they have lived for many years. Since Phyllis Grover received her undivided 1/15 interest in the property in 1981, a period now of over twenty years, the Grovers have had the benefit of the fact that the property has remained in family hands, unsold for new residential development in their neighborhood. The court notes also the meeting attended by the children in 1981 at which preferences for the receipt of property were discussed, including Phyllis Grover's, and the subsequent communications between the Grovers and Sung, which also involved Robert Cowles, about conveying to the Grovers the one-acre parcel they preferred.
While partition in kind, along the lines sought by the Grovers, is feasible here, it would be an inequitable result. In considering the question of partition in kind, the court is guided by Supreme Court precedent. In Borzencki v. Estate of Stakum, supra, 195 Conn. 375-82, the trial court's decision to order partition by sale was affirmed, based on the consideration of numerous factors. Among those was that, similar to the property at issue here, the' property in question there had a limited building area. See id., 375. The aesthetic perspective, including the "best view" was also deemed relevant. Id., 375, 379. Likewise, the best site for building was noted. See id.
Like the property here, the land at issue in that case contained a CT Page 4447-av substantial amount of wetlands. See id., 378. Also, the high elevation of the site was noted. Id., 379.
Of significance as well in Borzencki was the evidence of "the effect of separating the land sought by the plaintiff from the remaining portion."Id., 380. There was evidence to show that if the portion sought was removed, the value of the remainder would be diminished. See id. The same is true here.
If the property at issue here were partitioned in kind, with the Grovers obtaining an undivided interest in the one-acre parcel, they would receive a significantly valuable part of the property, in disproportion to Phyllis Grover's ownership interest of 1/15 or 6.67 per cent of the whole. According to Donald Grover, Parcel E, as shown on Plaintiff's Exhibit 3, is a flat piece of property. See Tr., p. 50. In the post-trial brief, he adds that "Marcia [Sung] has five acres of flat land, east of our one acre, without any rocks and on the same plain as our one acre." See defendants' post-trial brief, p. 2.[11] Again, this statement ignores the fact that neither the Grovers nor Sung own individual parts of the 15.3 acres which make up the property. Rather, the ownership consists of undivided interests, in the stated proportions, in the property as a whole. However, assuming, for the purposes of discussion, that the statement in the brief accurately describes the characteristics of the property, it points up the unfairness of the Grovers' argument in this litigation. As noted, Mrs. Grover owns only an undivided 1/15 interest in the property or 6.67 per cent. Yet, by seeking the one-acre parcel, the Grovers want to own a significantly higher percentage of the "buildable" land. If the one-acre parcel sought by the Grovers is added to the referenced flat area of five acres to the east, a total of six such acres results. The Grovers seek one acre of that total, which amounts to 16.67 per cent of it, more than twice Mrs. Grover's 6.67 per cent interest in the property as a whole.
Clearly, the value of the rest of the property would be reduced as a result of the subtraction of the one-acre parcel from it. This would be an inequitable result. An equitable partition in kind is not feasible in this situation.
The Borzencki court also considered the parties' historical association with the property. See Borzencki v. Estate of Stakum, supra,195 Conn. 376-77. While, based on the evidence, the court has considered the history of the Grovers' preference for the one-acre parcel, that preference must be considered in the context of the issues as a whole, as described. In addition, the court notes that there is no evidence before it to show that the result of partition by sale will deprive any party of CT Page 4447-aw either their residence or their livelihood. See, in contrast, Delfino v.Vealencis, 181 Conn. 533, 543, 436 A.2d 27 (1980) ("demonstrated practicability" of partition in kind; "[t]he trial court failed to give due consideration to the fact that one of the tenants in common has been in actual and exclusive possession of a portion of the property for a substantial period of time; that the tenant has made her home on the property; and that she derives her livelihood from the operation of a business on this portion of the property, as her family before her has for many years. A partition by sale would force the defendant to surrender her home and, perhaps, would jeopardize her livelihood").
For the reasons set forth above, the court finds that the physical attributes of the property make partition in kind inequitable and that the interests of the owners would better be promoted by partition by sale. See Wilcox v. Willard Shopping Center Associates, supra,208 Conn. 325-26. Partition by sale is the equitable method by which to partition the property.
 CONCLUSION
For the foregoing reasons, Sung has proved that she is entitled to a judgment of partition of the property, by sale. In accordance with General Statutes § 52-502, the court orders that a committee be appointed to effectuate a sale of the property, subject to the approval of the court. The court's Standing Orders on foreclosure by sale (JD-CV-79 New 6-02) shall be utilized in connection with the sale. The sale is to be conducted on Saturday, May 10, 2003, with publication dates in TheHartford Courant on April 27, 2003, and May 4, 2003. It is so ordered.
BY THE COURT
ROBERT B. SHAPIRO
JUDGE OF THE SUPERIOR COURT