[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
This action for a partition of real property concerns 29 acres of land, 22 acres in Weston and 7 acres in Fairfield. The property was originally owned by the defendant and her former husband, Ronald LaBow. The plaintiff Robert Rubin is a tenant in common with the defendant Myrna LaBow. He acquired a one half interest in the 22 acres in Weston by warranty deed from Ronald LaBow trustee on January 5, 1985, for $110,000. On January 16, 1985, Rubin acquired a one half interest in the Fairfield portion of the property by warranty deed from Anthony DeVita for $29,940.40.
Both parcels were originally owned jointly in survivorship by Myrna LaBow and Ronald LaBow. Myrna LaBow commenced a dissolution action in 1974. On November 5, 1975 while that action was pending, Ronald LaBow transferred his interest in the 22 acres in Weston to Richard H. Valentine, trustee. There is an ongoing dispute between the LaBows as to the validity of that trust, which was set up by Ronald LaBow as settlor. At the time the dissolution decree was issued by the court (Testo, J.) on August 28, 1978, the 22 acres in Weston was in the trust but Ronald LaBow still had record title to the seven acres in Fairfield. The dissolution decree made numerous orders, but did not transfer title to or direct the conveyance of either parcel to Myrna LaBow. On September 18, 1978, after the dissolution, Ronald LaBow transferred the Fairfield property to DeVita, who in turn later sold it to Rubin January 16, 1985. Ronald LaBow was later appointed successor trustee under the trust. Rubin acquired the 22 acres in Weston from LaBow as trustee on January 5 1985. At that time there was a pending contested proceeding for modification of the divorce decree, but there was no outstanding court order prohibiting transfer of either the Weston or the Fairfield property.
This partition action commenced July 5, 1979. On November 1, 1985, Rubin filed a motion for permission to join as a plaintiff because he had purchased the subject property, and that motion was later granted by the court. Since then a series of special defenses and counterclaims have been filed by Myrna LaBow. The CT Page 1231 original counterclaim filed on January 9, 1986 to the partition complaint of Rubin claims that he is not the real party in interest but purchased the property for less than its actual value in order to assist and benefit Ronald LaBow. A motion to strike that counterclaim was denied in July 1986, but a revised complaint containing seven counts against Rubin was not filed by the defendant until March 24, 1987. The seven count revised complaint alleges: (1) a fraudulent conveyance from Ronald LaBow to Rubin; (2) conspiracy between them; (3) malice; (4) deceit which misled the defendant; (5) greed and payment of less than the fair market value for the property; (6) infliction of emotional distress; and (7) that Rubin took charge of the subject property in disregard for the interest of the defendant in the property. The counterclaim was later amended twice to add an equitable claim that Rubin proceeded with unclean hands in purchasing the subject property, and a request for such other relief as the court deems proper.
The plaintiff has filed a motion for summary judgment on both the complaint and the counterclaim. As to the complaint, he claims that he has a right to partition pursuant to 52-495 of the General Statutes and that there is no valid defense to a partition in this case. Secondly, he claims that the counterclaims of the defendant are barred by: (1) the statute of limitations, 52-577 C.G.S.; (2) laches; (3) res judicata; (4) collateral estoppel; and that (5) awarding the subject property to the defendant would be an illegal modification of a property distribution in violation of 46b-86 of the General Statutes.
A summary judgment may be granted under 384 of the Connecticut Practice Book if the pleadings, affidavits and other proof submitted with the motion show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connelly v. Housing Authority,213 Conn. 354, 364. A material fact has been defined as a fact that will make a difference in the result of the case. Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578; Booth v. Flanagan, 23 Conn. App. 579, 584. A genuine issue has been described as either a triable, substantial or real issue of fact and one which can be maintained by substantial evidence. Craftsman, Inc. v. Young, 18 Conn. App. 463, 465. In determining whether there is a material issue of fact, the evidence is considered in the light most favorable to the non-moving party. Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 317; Connell v. Colwell, 214 Conn. 242, 246, 247. Once the moving party has presented evidence in support of the motion for summary judgment, CT Page 1232 the opposing party must present evidence that demonstrates the existence of some material disputed factual issue. State v. Goggin, 208 Conn. 606, 612. Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11, 12. The mere presence of an alleged adverse claim is not sufficient to defeat a motion for summary judgment. Farrell v. Farrell, 182 Conn. 34, 39; Pinheiro v. Board of Education, 30 Conn. App. 263, 267. Accordingly, a claim that factual issues exist is insufficient to establish the existence of a material fact sufficient to refute evidence properly presented to the court under 380 of the Practice Book. Connell v. Colwell, supra, 254. The party opposing the motion must raise evidentiary facts or substantial evidence outside the pleadings from which the material facts alleged in the pleadings can warrantably be inferred. Na-Mor Inc. v. Roballey, 24 Conn. App. 215, 217. The test as to whether a summary judgment should be granted, namely that the moving party is entitled to judgment as a matter of law, is resolved by applying to the established facts the same criteria as is used in determine whether a party would be entitled to a directed verdict on the same facts. Connelly v. Housing Authority, supra, 364; State v. Goggin, supra, 616.
The defendant has raised several special defenses to the complaint which basically track her counterclaim. It alleges that the trust which formerly owned the property conveyed to Rubin is a sham and is fraudulent as to her. The second special defense pertains to a judgment lien which is not relevant to this case, and which has been disposed of in another appeal. The defendant also claims to be a creditor of Ronald LaBow. Her main claim is that Ronald LaBow did not have the right to sell his one half interest in the Weston property to Rubin and that Anthony DeVita was an alter ego of LaBow as to the Fairfield property ultimately acquired by Rubin. The defendant relies upon statements about her ex-husband in the divorce decree by Judge Testo dated August 28, 1978 and the modification to the decree by Judge Saden on September 9, 1985. The defendant may be correct that there are genuine issues of material fact as to whether the trust set up by Ronald LaBow and which originally owned his one half interest in the Weston property was valid, or was an attempt to defraud the defendant. However, whether it was or was not a valid trust is not controlling on the issues in this case. For purposes of the plaintiff's motion for summary judgment on the complaint and counterclaim, the court presumes that the trust may have been illegal and subject to collateral attack by the defendant at an appropriate point in this long saga of litigation. Even if that is true, there is no material factual question as to the chronological history of the CT Page 1233 conveyances in this case, and several of the special defenses bar all of the counts of the counterclaim as a matter of law.
The conveyance by Ronald LaBow to the existing trust on November 5, 1975 while the divorce action was pending, severed the joint tenancy with right of survivorship in the Weston property and created a tenancy in common. Section 47-14c C.G.S.; see also Liscio v. Liscio, 204 Conn. 502, 505. The divorce of the LaBows on August 28, 1978 severed the joint tenancy in the Fairfield property. Section 47-14g C.G.S. Rubin later acquired both parcels by warranty deed in January 1985. If the defendant had no valid legal or equitable claim to either parcel at that time against the grantors, she has no valid claim against Rubin now, and the purchase price he paid for the land, his intent in acquiring it, and his arrangements and cooperation with Ronald LaBow are irrelevant.
When the divorce action commenced, Ronald LaBow owned a one-half interest in both the Weston and Fairfield parcels. Myrna LaBow could obtain that interest only from the equitable jurisdiction of the Superior Court in dissolution actions and 46b-81
of the General Statutes, whereby the court could at the time of dissolution of the marriage assign and transfer title to real property to either spouse. Courts have no inherent power to transfer property from one spouse to another, but that power must rest upon an enabling statute. Rubin v. Rubin, 204 Conn. 224, 228-29. While 46b-81 (a) allows the trial court to transfer property in a marital dissolution action, the court does not retain continuing jurisdiction over any portion of the judgment that constitutes an assignment of property. Passamano v. Passamano,228 Conn. 85, 89n; Bunche v. Bunche, 180 Conn. 285, 289. Therefore a property division order generally cannot be modified by the trial court after the dissolution decree is entered, subject only to being open within four months after the date the judgment is rendered pursuant to 52-212a of the General Statutes. Passamano v. Passamano, supra, 89n. Here there was no attempt to modify Judge Testo's dissolution decree of August 28, 1978 within four months after that judgment. While the 1978 dissolution decree entered financial awards in favor of the defendant, she was not given Ronald LaBow's one half interest in either the Weston or Fairfield properties. Ronald Labow then sold the Fairfield property to Anthony DeVita for $40,000. This asset was known to the defendant at the time of the divorce, and the decree eliminated any legal claim of the defendant to it. There is also nothing in the record to indicate that DeVita was anything other than a bona CT Page 1234 fide purchaser of value, and even if he paid less than the fair market value of the property at that time, that is not the defendant's concern. Accordingly, Rubin's purchase of the Fairfield property from DeVita in 1985 was free and clear of any claims of the defendant.
As part of the divorce judgment, Judge Testo did not give the defendant title to the Weston property either. Arguably the court did not make any orders as to the Weston property because it was no longer a marital asset at the time of the dissolution decree in 1978, as a result of the conveyance to the trust in 1975. If the transfer to the trust in 1975 was valid, then clearly the defendant had no right to make any claim to it in 1978. On the other hand if it was invalid, as the defendant claims, she had a possible claim to that property. As a prerequisite to acquiring it, the conveyance would have to be set aside, and the court would then have to determine that some or all of Ronald LaBow's interest in it should be awarded to the defendant.
While the defendant had several opportunities to assert a fraudulent conveyance claim, she missed all of them. First of all, a fraudulent conveyance claim could have been raised as to the Weston property in the original dissolution action, by joining that claim as a second count to the complaint, or by asserting it in a cross complaint. Molitor v. Molitor, 184 Conn. 530, 532. See also Derderian v. Derderian, 3 Conn. App. 522, 527. In addition, the court at the time of dissolution of a marriage can consider as part of the marital estate property that has been fraudulently transferred by one of the parties even though for some reason the court does not set aside the transfer. Watson v. Watson, 221 Conn. 698,709; Miller v. Miller, 22 Conn. App. 310 "Such an outcome prevents a party to a dissolution action from inequitably benefitting [benefiting] from his fraudulent transfer of real property by reducing the assets that would otherwise be included in the marital estate and available for assignment pursuant to General Statutes46b-81." Watson v. Watson, supra, 709. Whether Judge Testo considered this in 1978 is unclear, but he could have done so if the point had been raised by the defendant at that time.
Putting aside the statute of limitations problems, the defendant also had an opportunity to litigate the question, (assuming the assignment of property in 1978 would not bar its reconsideration), when the parties pursued the modification proceedings between 1982 and 1985. The trust could have been added as a party at that time as well as when the dissolution proceedings CT Page 1235 were pending between 1975 and 1978. See Gaudio v. Gaudio, 23 Conn. App. 287,293-94. While Judge Saden concluded in his decision of September 9, 1985 that the trust was a sham, he failed to transfer the Weston property to the plaintiff at that time, presumably because he thought that the defendant's request for a conveyance of a half interest in the Weston property was barred by the concept discussed above that property assignments are not subject to modification under the predecessor statute to what is now 46b-81. Modification of dissolution decrees is governed by 46b-86 (a) which expressly states it does not apply to assignments of property under46b-81 of the General Statutes, or to any assignment of the estate or portion thereof of one party to the other party under prior law. If the defendant claimed that Judge Saden's order was erroneous, she could have appealed that decision in 1985, or raised it as a cross appeal to the appeal of her ex-husband. This did not occur. See LaBow v. LaBow, 13 Conn. App. 330.
The concept of collateral estoppel prevents re-litigating an issue that was actually litigated and decided in a prior action. Aetna Casualty Surety Co. v. Jones, 220 Conn. 285, 296. Even though there are different parties in this case, the concept still applies. Id., 300-303. Collateral estoppel or issue preclusion is the fundamental principle that once a matter has been fully and fairly litigated and finally decided cannot be raised later. Jackson v. R. G. Whipple, Inc., 225 Conn. 705, 712. Even though the rulings of both Judge Testo and Judge Saden were favorable to the defendant, they did not award her the property, and she cannot obtain it now.
In a proper case a judgment can be collaterally attacked for fraud. Kenworthy v. Kenworthy, 180 Conn. 129, 131. In order to prove fraud, the claimant must show: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be untrue by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. Billington v. Billington,220 Conn. 212, 217. In order to set aside a marital judgment on grounds of fraud: (1) there must have been no laches or unreasonably delay by the injured party after the fraud was discovered; (2) there must be clear proof of the perjury or fraud; and (3) the must be a substantial likelihood that the result of the new trial will be different. Id., 218. The defendant knew that the property had been transferred to the trust in 1978, and maintained then as she does now that the transfer into the trust was a sham and a fraud. Nevertheless she did not join a fraudulent CT Page 1236 conveyance count through the dissolution action or bring an action to set aside the transfer to the trust as a fraudulent conveyance within three years after the dissolution decree. An action claiming fraud is governed by the three year statute of limitations in 52-577 of the General Statutes. Rosenblatt v. Berman,143 Conn. 31, 39. That statute of limitations also applies to fraudulent conveyance claims. Travelers Indemnity Co. v. Rubin,209 Conn. 437, 441. Section 52-577 provides that "no action founded upon a tort shall be brought but within three years from the date the act or omission complained of." While the court agrees with the plaintiff that the defendant was not a creditor or Ronald LaBow at any time as to his one half interest in the Weston property, which arguably defeats any fraudulent conveyance claim other than an attempt to obtain the asset as a property distribution by the court in a dissolution action pursuant to 46b-81, whether she had or did not have a claim against her former husband, it is clearly barred by the statute of limitations. The first pleading to raise a claim of fraudulent transfer the Weston property by Ronald LaBow to Richard Valentine as trustee occurred when the defendant's cross complaint was filed in this action on December 11, 1981. As of that date the claim was barred by the three year statute of limitations. When Rubin bought the subject property in January 1985, any colorable claim of the defendant to set aside the prior transfer by her ex-husband on grounds of fraudulent conveyance had long since expired.
There is also merit to the plaintiffs claim that the defendant was not a creditor of Ronald LaBow after the dissolution judgment of August 28, 1978 when the plaintiff was not awarded any interest in the subject property. As of that date any other financial obligations of Ronald LaBow to the defendant were merged into the divorce decree. Tobey v. Tobey, 165 Conn. 742, 745. The defendant was not a creditor of a Ronald LaBow. In order to set aside the transfer to the trust as fraudulent, defendant would have to bring a timely action and prove by clear, precise and unequivocal evidence they conveyance was made with fraudulent intent in which the grantee (Valentine) participated. Watson v. Watson, 221 Conn. 698,707. However, the intent of Ronald LaBow and Valentine is immaterial here because any fraudulent conveyance claim is barred by the statute of limitations.
Most of the defendant's other counterclaims fail because they are dependent upon a colorable claim to attack the conveyance to Rubin as fraudulent. Since the defendant had no legal or equitable interest in either the Weston or Fairfield parcels when Rubin CT Page 1237 purchased them in 1985, her other claims, based upon the circumstances under which Rubin acquired those parcels is irrelevant. She has no standing to question the terms under which Ronald LaBow and DeVita sold the one-half interest in both parcels to Rubin since she no longer had any right to attack the prior conveyances as fraudulent. This defeats the claims of conspiracy, deceit as to statements regarding Rubin's intent to purchase the property, the claim that he is not a bona fide owner of both parcels, that he obtained them with malice towards the defendant or with unclean hands. In short, and for reasons argued on pages 28 and 29 of the plaintiff's brief, proof of a fraudulent conveyance of the one half interest formerly owned by Ronald LaBow as alleged in the first count is a prerequisite to the claims under the second, fourth, fifth, sixth, seventh and eighth counts of attempts to prevent the defendant from exclusively owning the land. The ninth count fails to state a cause of action. As a bona fide owner of a one half interest in the property, Rubin had as much right as the defendant to exercise his ownership rights.
The third count of the complaint claims intentional infliction of emotional distress. This claim was first asserted in the defendant's revised complaint of April 24, 1987. The factual statements in the revised counterclaim of July 26, 1988 state that Rubin was aware that Valentine and Ronald LaBow were not valid owners of a one half interest in the Weston and Fairfield properties, or that Rubin was aware of the divorce situation between the LaBows and that he improperly acted as a one half owner of the property despite the defendant's objections. It is also claimed that Rubin and LaBow conspired to prevent the defendant from receiving Ronald LaBow's portion of the two parcels and that they conspired to prevent the eviction of tenants named Escobar on the Weston property. That is the alleged basis for the claim of intentional infliction of emotional distress contained in the third count of the counterclaim. In order for a plaintiff to prove intentional infliction of emotional distress, four elements must be established: (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the actor's conduct was the cause of the claimant's distress; and (4) the emotional distress sustained by the plaintiff was severe. DeLaurentis v. New Haven, 220 Conn. 225, 266, 267; Petyan v. Ellis, 200 Conn. 243, 253; 1 Restatement (Second), Torts 46. Liability for intentional infliction of emotional distress requires "conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does CT Page 1238 cause, mental distress of a very serious kind." DeLaurentis v. New Haven, supra, 267; Petyan v. Ellis, supra, 254 n. 5. Moreover, even where conduct is otherwise extreme and outrageous, it is privileged where the actor has done no more to insist upon his rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Petyan v. Ellis, supra, 254, 255.
Even if the defendant can show the acts alleged in the counterclaim and their effect upon her satisfy the first, third and fourth elements for intentional infliction of emotion distress, the evidence submitted by the parties on the motion for summary judgment, applying the test for such motions, does not satisfy the second component that Rubin's conduct was extreme and outrageous. Rubin had abutting property, and even if his conduct to some extent took advantage of the defendant, the court is aware of no authority, and the defendant has cited none, that the purchase of property which was available for sale and purchased by a buyer, even in collusion with the seller, amounts to extreme and outrageous conduct. Whatever Rubin did, it was not "conduct exceeding all bounds usually tolerated by decent society." DeLaurentis v. New Haven, supra, 267. There is nothing illegal in purchasing property, even if it may be clouded by claims of others, from a willing seller, and even though someone else, including a co-tenant, may be upset that they did not obtain the property instead. The defendant has not raised sufficient evidence to create a material question of fact on this claim, and the plaintiff is entitled to judgment as a matter of law.
The next question is whether the plaintiff is entitled to summary judgment on the partition complaint. Where a plaintiff has record title as a tenant in common to one half of the fee he is entitled to maintain an action for partition of the property under52-495 of the General Statutes or for a sale under 52-500. Harrington v. Harrington, 20 Conn. App. 492, 494. The owner need only have the right to possession to maintain such an action. Id.; Penfield v. Jarvis, 175 Conn. 463, 467. As stated in Wilcox v. Willard Shopping Center Associates, 208 Conn. 318, 325:
 "The right to partition is founded on the principle that no person can be compelled to remain the owner with another of real property, even if the party seeking partition willingly entered into the joint ownership. Johnson v. Ulmstead, 49 Conn. 509, 517 (1882). CT Page 1239 General Statutes 52-495 confers an absolute right of partition upon any person holding real property as a tenant in common with others. DelFino v. Vealencis, 181 Conn. 533, 536-37, 436 A.2d 27 (1980). In those cases where the court finds that a sale of the property would better promote the interests of the owners, the court may order such a sale. General Statutes 52-500; DelFino v. Vealencis, supra, 536."
A partition action is equitable in nature and the court determines whether to order a partition under 52-495 or a sale under 52-500. Since the purpose of the action is to sever or dissolve involuntary joint ownership in real property, the court must do one or the other and thus terminate the ownership relationship between the parties. Wilcox v. Willard Shopping Center Associates, supra, 326.
The defendant has filed several special defenses against the partition action which include claims that the deed to the trust in 1975 was a sham and invalid, that the defendant is a creditor of Ronald LaBow, that he is responsible for certain expenses concerning the property and that it was a scheme to keep the defendant penniless. Most of these defenses have been discussed and disposed of under the counterclaim. In any event they are not valid defenses to Rubin's partition action.
There is a presumption that partition in kind rather than a partition by sale is in the best interest of the owners. Wilcox v. Willard Shopping Center Associates, supra, 325, 326; Borzencki v. Estate of Stakum, 195 Conn. 368, 372; DelFino v. Vealencis, supra, 536-38. The burden of proof that a partition by sale should occur under 52-500 is upon the party requesting a sale to show that it is the better remedy. Wilcox v. Willard Shopping Center Associates, supra, 326. This motion is not an appropriate time to determine that question. The plaintiff is entitled to summary judgment on the right to partition since the defenses are insufficient to prevent it, and under the clear and relevant facts in this case the plaintiff is entitled to judgment as a matter of law. However, the parties have the right to present evidence to the court and argue in favor or either a partition in kind or a petition by sale.
The plaintiff's motion for summary judgment is granted as to CT Page 1240 plaintiff's complaint, the defendant's defenses to it and the defendant's counterclaim. The defendant's objections to the motion for summary judgment have been considered and are rejected. Further proceedings are ordered to determine whether a partition in kind or a partition by sale should be ordered, and any conditions which should be attached thereto.
ROBERT A. FULLER, JUDGE