ELEANOR E. WILCOX ET AL. *v.* WILLARD SHOPPING CENTER ASSOCIATES ET AL.
(13372)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued May 3—decision released July 19, 1988

*Matthew J. Forstadt,* with whom, on the brief, was *Leonard Bieringer,* for the appellant (named defendant).

*Julius B. Kuriansky,* for the appellee (plaintiff Roberto Sandolo).

HULL, J. The named defendant, Willard Shopping Center Associates (Associates), appeals from the judgment of the trial court, on the report and recommendation of an attorney state trial referee, ordering partition by sale of property owned by Associates as tenants in common with the plaintiff Roberto Sandolo.

This dispute involves the disposition of the Willard Shopping Center, a 22,000 square foot strip shopping center in Stamford. Sandolo and the members of Associates operate or formerly operated businesses in the shopping center.[1] The shopping center is comprised of

---

[1] The members of Associates are Harold and Rose O'Donnell, Guy and Mary DeBlasi, David Goldfarb and Ursa Coleman. At the time of trial, Harold O'Donnell had been operating his delicatessen in the shopping cen-

ten units: eight stores, a bank and an office. The parties acquired their interests following the death of Louis N. Stebe and in the wake of a will contest between his daughter, Eleanor E. Wilcox, and his daughter-in-law, Lucille M. Stebe. Wilcox controlled an aggregate undivided 75 percent interest as an individual and in her capacities as trustee and executrix under Louis N. Stebe's will. Lucille Stebe owned an undivided 25 percent interest in the property.

Sandolo and the other tenants of the shopping center met several times to explore the possibility of purchasing the various interests and sought the advice of counsel and real estate experts to estimate the value of the property and determine how best to proceed. It soon became evident that the group would not be able to acquire all the interests at once. Some of its members agreed to pursue acquisition of Lucille Stebe's 25 percent interest in the hope of purchasing the balance at a later date. In conjunction with this plan, the group discussed the possibility that a partition action might be brought by the holder of the 75 percent interest. Sandolo sought advice from his own attorney who advised him not to participate in the group's plan. Unbeknownst to the other group members, he had been independently exploring the possibility of acquiring the 75 percent interest from Wilcox.

Associates entered into a joint venture agreement for the purpose of buying Lucille Stebe's interest. Sandolo did not subscribe to it and withdrew from the group. Subsequently, Sandolo and Wilcox entered into an agreement for the purchase and sale of the interests she controlled.

---

ter for twenty-two years, Guy DiBlasi had been running his dry cleaning store there for twenty-five years, and Goldfarb had done business as a goldsmith there for sixteen years. Coleman was retired but had been a tenant in the shopping center for about ten years. Roberto Sandolo had been operating his restaurant there for about twenty-four years.

Following Associates' acquisition of Lucille Stebe's interest, Wilcox, in her various capacities, brought this action seeking partition of the shopping center, or its sale and division of the proceeds. Lucille Stebe, who held a mortgage on the interest she had sold to Associates, was named a party defendant. Upon conveyance of Wilcox's interests to Sandolo, Sandolo was substituted for Wilcox as a party plaintiff. Associates advanced four special defenses and two counterclaims.[2] Associates also moved for partition in kind rather than by sale.

The action was referred to an attorney state trial referee for trial. The referee found that the highest and best use of the property is as a strip shopping center, that the entire premises are serviced by a septic system that is not in good working order and that requires constant repair, that the electrical utilities for all the units are located in one utility room at the rear of one of the stores, that there are drainage problems affecting some of the units, that the parking lot is in need of considerable repair, and that, because the shopping center exists as a valid nonconforming use, any physical division of the property would place it in violation of the Stamford zoning regulations. For these reasons, the referee found that physical partition of the property was impracticable and impossible. He also ascertained that Sandolo and Associates each was financially able to purchase the shopping center at its fair market value.

Associates did not dispute the impossibility of physically partitioning the shopping center but proposed that partition in kind be effected by the imposition of a commercial condominium on the property. Although the referee expressed doubt as to the legality of such

---

[2] The decision as to the special defenses and counterclaims is not at issue in this appeal.

a remedy, he posited that if it were legally permissible, imposition of condominium ownership was a practical and possible method of partition, "factually." Associates proposed alternatively that it was ready, willing and able to purchase Sandolo's interest and that it was willing to grant him a lease for ten years on terms no less favorable than terms it would accept.

The referee issued a report and memorandum recommending that the trial court render judgment for Sandolo and that a sale of the shopping center be ordered.[3] Associates moved that the referee's report be corrected to reflect its offer of a lease to Sandolo. The referee refused to correct the report, stating that Sandolo was under no legal obligation to accept the offer nor was the court permitted to consider the existence of such unaccepted offers. The trial court accepted the referee's report and rendered judgment in accordance with his recommendations, stating that it believed partition in kind through the mechanism of a condominium was neither practical nor legally permissible.

Associates appeals from the judgment, claiming that the trial court erred (1) in holding that partition in kind could not be effected by application of the Common Interest Ownership Act (CIOA); General Statutes §§ 47-200 through 47-293; and (2) in failing to afford Associates the opportunity to purchase Sandolo's interest for a sum in excess of the property's fair market value. We find no error.

Associates urges this court to approve its novel proposal that the trial court appoint a committee to draft a condominium declaration for the entire property. Associates argues that conversion of the property to a commercial condominium would afford all the par-

---

[3] Associates had also asserted two cross complaints against Lucille Stebe which were resolved in her favor. Associates originally appealed from the judgment on both the complaint and the cross complaints but has since withdrawn its appeal as to the cross complaints.

ties the opportunity to continue to operate their businesses at the locations they have occupied for many years, a desire expressed by Associates' members and Sandolo. Further, Associates suggests that, in light of the unequal ownership shares presently held by each party, equalization of values could be achieved by a monetary award to Sandolo. Associates posits that this solution would better promote the interests of the parties than would a sale of the property in that it would avoid the possibility of interruption, relocation or demise of their businesses, and that, if Sandolo were dissatisfied with the condominium arrangement, he could sell his unit. Associates suggests that the condominium declaration be drafted to establish majority control subject to the requirement that the majority act responsibly with respect to the minority's interests.

Associates contends that implementation of this solution is consistent with the court's factual finding that the highest and best use of the property is as a shopping center, that it would comport with the law's preference for partition in kind over the more drastic remedy of partition by sale which would deprive the members of Associates of their livelihoods, and that, when converted, the value of the property would remain substantially the same as before conversion.

Sandolo counters that Associates' proposal is neither legally permissible nor practicable. He argues that imposition of the condominium form of ownership would compel the parties to remain co-owners in the property, contrary to the objective sought to be achieved by this litigation. Further, he notes that CIOA nowhere provides for its implementation by compulsion. To the contrary, he argues, the statute contemplates cooperation among the owners in the formation of a condominium and cooperation among the unit owners in its daily management. The proposal contemplates that Sandolo and Associates' members would become

the unit owners. In that connection, Sandolo notes that relations between himself and Associates have been fractious throughout the course of this litigation and have necessitated appointment of a receiver to collect rents and manage the property's everyday affairs. Thus, he contends, the likelihood of eliciting the needed cooperation is very slim.

While Associates' proffered resolution of this dispute is superficially attractive, we agree with Sandolo, the referee and the trial court that imposition of the condominium form of ownership is not legally permissible. Since we conclude that, as a matter of law, the trial court is not empowered to grant the relief requested by Associates, we need not consider the practicability of affording such relief.

Associates does not quarrel with the referee's finding that the shopping center is not susceptible of practicable or equitable physical division. It argues, however, that Connecticut's long established preference for partition in kind can be advanced by converting the property to a commercial condominium. Further, Associates contends that the legislature did not preclude implementation of CIOA in the context of a partition action, but rather intended the two statutory schemes to be employed together. We are unpersuaded. While we agree with Associates that the law presumes that the legislature seeks to create a harmonious and consistent body of law; *In re Juvenile Appeal (85–BC),* 195 Conn. 344, 367 n.18, 488 A.2d 790 (1985); *State* v. *Murtha,* 179 Conn. 463. 466, 427 A.2d 807 (1980); we are unconvinced that CIOA was enacted as an additional vehicle to effect partition in kind.

The plaintiff has directed our attention to no case in this or any other jurisdiction in which partition in kind has been effected by imposition of a condominium, nor has our research disclosed any such case. Moreover,

while it is true that such a remedy is not expressly ruled out by either the partition statutes or CIOA, our examination of the statutes and the policies they implement reveals their incongruity.

The right to partition is founded on the principle that no person can be compelled to remain the owner with another of real property, even if the party seeking partition willingly entered into the joint ownership. *Johnson* v. *Olmsted,* 49 Conn. 509, 517 (1882). General Statutes § 52-495[4] confers an absolute right of partition upon any person holding real property as a tenant in common with others. *Delfino* v. *Vealencis,* 181 Conn. 533, 536–37, 436 A.2d 27 (1980). In those cases where the court finds that a sale of the property would better promote the interests of the owners, the court may order such a sale. General Statutes § 52-500;[5] *Delfino* v. *Vealencis,* supra, 536. This jurisdiction has long favored partition in kind, or physical division,

---

[4] "[General Statutes] Sec. 52-495. PARTITION OF JOINT AND COMMON ESTATES. Courts having jurisdiction of actions for equitable relief may, upon the complaint of any person interested, order partition of any real property held in joint tenancy, tenancy in common, coparcenary or by tenants in tail. The court may appoint a committee to partition any such property. Any decrees partitioning entailed estates shall bind the parties and all persons who thereafter claim title to the property as heirs of their bodies."

[5] "[General Statutes] Sec. 52-500. SALE OF REAL OR PERSONAL PROPERTY OWNED BY TWO OR MORE PERSONS. (a) Any court of equitable jurisdiction may, upon the complaint of any person interested, order the sale of any property, real or personal, owned by two or more persons, when, in the opinion of the court, a sale will better promote the interests of the owners.

"(b) The provisions of this section shall extend to and include land owned by two or more persons, when the whole or a part of the land is vested in any person for life with remainder to his heirs, general or special, or, on failure of the heirs, to any other person, whether the land, or any part thereof, is held in trust or otherwise. A conveyance made pursuant to a decree ordering a sale of the land shall vest the title in the purchaser thereof, and shall bind the person entitled to the life estate and his legal heirs and any other person having a remainder interest in the lands. The court issuing the decree shall make such order in relation to the investment of the proceeds of the sale as it deems necessary for the security of all persons having any interest in such land."

over partition by sale. *Borzencki* v. *Estate of Stakum,* 195 Conn. 368, 372, 489 A.2d 341 (1985); *Delfino* v. *Vealencis,* supra; *Harrison* v. *International Silver Co.,* 78 Conn. 417, 420, 62 A. 342 (1905); *Johnson* v. *Olmsted,* supra. Because we presume that partition in kind is in the best interests of the owners, the burden of proof rests on the party seeking a sale to demonstrate that it is the better remedy. *Borzencki* v. *Estate of Stakum,* supra; *Delfino* v. *Vealencis,* supra, 538. This burden may be carried by satisfying two conditions: (1) the physical attributes of the property make partition in kind impracticable or inequitable; and (2) the interests of the owners would better be promoted by partition by sale. *Borzencki* v. *Estate of Stakum,* supra; *Delfino* v. *Vealencis,* supra, 537–38. A plaintiff in an action for partition seeks to sever or dissolve involuntary joint ownership in real property. In furtherance of that objective, a court is limited to rendering a judgment of either partition in kind or by sale of the real property; *Klaus* v. *Klaus,* 143 Conn. 218, 221, 121 A.2d 283 (1956); thus terminating the ownership relationship between the parties.

On the other hand, CIOA affords the purchaser of a condominium fee simple ownership of his unit while sharing with other unit owners the burdens and benefits of the community's common elements. CIOA is a detailed statutory scheme governing the creation, organization and management of common interest communities and contemplates the voluntary participation of the owners. It entails the drafting and filing of a declaration describing the location and configuration of the real property, development rights, and restrictions on its use, occupancy and alienation; General Statutes §§ 47-220, 47-224; the enactment of bylaws; General Statutes § 47-248; and the establishment of a unit owners' association; General Statutes § 47-243; and an executive board to act on its behalf. General

Statutes § 47-245. It anticipates group decision-making relating to the development of a budget, the maintenance and repair of the common elements, the placement of insurance, and the provision for common expenses and common liabilities. General Statutes §§ 47-244, 47-245, 47-255, 47-249. The Condominium Act imposes additional requirements pertaining, for example, to the amendment of the declaration and bylaws; General Statutes § 47-70a (a); and to the allocation of profits and expenses. General Statutes § 47-76. Further, a unit owner seeking to sell his interest to a third party would require the involvement of the unit owners' association in order to provide certain information required by General Statutes § 47-75a to be disclosed to the purchaser.

In sum, were the court to superimpose a condominium on the shopping center, relations between Associates and Sandolo would be further complicated. Clearly, this is not the goal to be achieved by an action for partition of real property, and would run counter to the policy sought to be advanced by the statutes governing partition. Rather than dissolving the cotenancy between the parties, it would compel Sandolo to remain a joint owner with Associates at least until such time as the condominium is established. We can discern no legislative intent to delay the severance of joint ownership by creation of a condominium out of the property to be partitioned. We would overstep the bounds of our authority if, in the absence of clear legislative intent, we were to engraft the provisions of CIOA onto the partition statutes to achieve the result sought by Associates. *Zapata* v. *Burns*, 207 Conn. 496, 504, 542 A.2d 700 (1988); *State* v. *Perruccio*, 192 Conn. 154, 163 n.4, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984). Accordingly, we hold that the trial court correctly concluded that imposition of a condominium is not legally possible.

Moreover, Associates' contention that sale of the property would force the termination of its members' businesses is not supported by the record. The referee specifically found that both Associates and Sandolo are financially able to purchase the shopping center at its fair market value. Should Associates succeed in acquiring the property, its members would be in a position to guarantee continuation of their businesses at their current location. We decline to speculate as to the disposition that would be made of the property by Sandolo or a stranger to these proceedings should either outbid Associates. In any event, "the most that can be insisted upon by plaintiff or defendant is that the undeniable right to severalty in ownership shall be secured by the least injurious of the two specified modes [partition in kind or by sale]." *Johnson* v. *Olmsted,* supra, 518. In light of the choices available to the court and Associates' concession that physical partition is impossible, we uphold the trial court's order of partition by sale of the property as the remedy that would better promote the interests of the parties.

Further, we find no error in the refusal of the trial court to entertain Associates' offer to purchase Sandolo's interest and enter into a lease with him in order for him to continue operating his restaurant in the space he now occupies. In *Klaus* v. *Klaus,* supra, 221–22, we held that inasmuch as the trial court in a partition action was confined to rendering a judgment of either partition in kind or by sale of the real property, the plaintiff husband's offer to abandon his claim for partition by sale on condition that the defendant wife purchase the property was of no moment, notwithstanding the plaintiff's argument that this solution would be in the best interests of their children. Associates has advanced no reason why we should consider its offer in a different light. At best, it has made an offer of settlement and compromise which has not been accepted by Sandolo.

Accordingly, the referee properly refused to consider the offer in his deliberations. See *Nearing* v. *Bridgeport,* 137 Conn. 205, 209, 75 A.2d 505 (1950) (offer of compromise inadmissible); *Beattie* v. *McMullen,* 82 Conn. 484, 495, 74 A. 767 (1909) (evidence of offer of compromise properly excluded); see also *Johnson* v. *Hendrickson,* 71 S.D. 392, 397, 24 N.W.2d 914 (1946) ("[t]he law favors the compromise and settlement of disputed claims because it is in the interest of the state that there should be an end to litigation, but such offer does not present a justiciable question. It is the function of the court to hear and decide questions of law and fact, not to use its influence to bring about the composition of disputes.").

Finally, the trial court ordered that the sale be conducted on April 12, 1987. Since that date has passed, the sale must be rescheduled.

There is no error and the case is remanded to the trial court with direction to modify the judgment by fixing a new day for the sale of the property.

In this opinion the other justices concurred.