[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a partition action commenced by the plaintiff Donna Wright by a complaint dated August 20, 1990. The defendants are Isaac L. Smith, Union Trust Company, Estate of Sadie I. Phillips, United States of America and the Town of Hamden. The United States of America filed an answer dated October 2, 1990. Defaults for failure to plead were entered against the defendants Union Trust Company, Estate of Sadie I. Phillips and the Town of Hamden on March 5, 1991. The defendant Isaac L. Smith filed an answer, four special defenses and a counterclaim on June 16, 1993. On June 18, 1993 the plaintiff filed an answer to the defendant Isaac L. Smith's counterclaim and a reply to his four special defenses.
The plaintiff and the defendant Isaac L. Smith purchased a condominium on November 20, 1987 as tenants-in-common with each party owning an undivided one-half (1/2) interest. This condominium is located at 163 Hightop Circle, Hamden, Connecticut, and is also known as Unit B6B of the Laurels Condominium. It is described more particularly as follows:
 A certain premises situated in the Town of Hamden, County of New Haven and State of Connecticut, known as:
 Unit B6B of Building B of THE LAURELS CONDOMINIUM (#1), INC., together with an undivided interest in the common areas and facilities appurtenant thereto. Which real property is situated on premises submitted to and subject to, the condominium form of ownership, pursuant to the Unit Ownership Act of the Connecticut General Statutes (Section 47-through and including Section 47-89), as amended to date; which premises are located in CT Page 12235 the Town of Hamden, County of New Haven and State of Connecticut and as more particularly shown on a certain map on file in the office of the Town Clerk of said Hamden, entitled "THE LAURELS Hamden, Connecticut, Scale 1" = 20' Sept. 25, 1972" prepared by Gordon Bilides, P.E., Civil Engineer and Land Surveyor, 60 Connolly Parkway, Hamden, Connecticut.
 Which units and common areas are more fully defined, identified and described in the "DECLARATION ESTABLISHED A PLAN FOR CONDOMINIUM OWNERSHIP PURSUANT TO TITLE 47 OF THE CONNECTICUT GENERAL STATUTES, 1958, REVISED THROUGH PUBLIC ACTS, FEBRUARY SESSION, 1972, AND MAY SPECIAL SESSION, 1972, AND JUNE SPECIAL SESSION, 1972" dated December 29, 1972 and in Exhibits A, B, C, D, E appended thereto, recorded commencing at Vol. 585, Page 344 of the Hamden Land Records, the Amendment to said Declaration entitled "AMENDMENT TO THE LAURELS CONDOMINIUM DECLARATION OF CONDOMINIUM" dated and recorded in said Hamden Land Records at Vol. 585, Page 1121 on February 7, 1973, and any amendments or modifications subsequently made thereto.
At the time of the purchase of this condominium the plaintiff and Mr. Smith entered into a Co-Ownership Agreement which they signed at the closing of the aforesaid condominium. (Exhibit A). The plaintiff seeks to have the court reform that Agreement as she testified that it does not reflect the intent of the parties. At the time of this property closing the plaintiff and Mr. Smith were living together and expecting a child. The plaintiff testified that one of the main factors for drawing up the Co-Ownership Agreement was to ensure the future well-being of that child. She testified that she wanted to insure that the parties' child had a nice place to live in the future even if the parties no longer lived together. The parties lived together in the condominium from the date it was purchased on November 20, 1987 until approximately August 1, 1989 when the defendant Isaac L. Smith moved out. According to the plaintiff's testimony she and Isaac L. Smith subsequently lived together between December 20, 1989 and May 15, 1990 and from mid-1991 to August 1992. The parties signed a mortgage note for $94,400.00 on November 20, 1987, which note was secured by a mortgage on said condominium.
The plaintiff testified that she paid $19,883.00 as her share of the down payment for the condominium and that Mr. Smith paid $7,000.00 as his share so that the total down payment was $26,883.00. The plaintiff testified that Mr. Smith could not CT Page 12236 raise his share of the down payment so she signed title to her automobile, a 1987 Grand Am, over to Mr. Smith. He then secured a loan from the bank for $7,800.00 using said automobile as security for said loan. Of those proceeds $500.00 were used for loan fees and the balance of $7,300.00 was given to the plaintiff by Mr. Smith and was used as part of her down payment of $19,883.00. The plaintiff testified that this is why in Article II, Section 2.01 of the Co-Ownership Agreement she is to pay 76% of the down payment and Mr. Smith is to pay 24% of it.
The plaintiff testified that Mr. Smith was supposed to make the payments on the loan and when it was paid off he would then own fifty (50%) percent of said condominium. As he paid off said loan his interest in said condominium would increase from twenty-four (24%) percent set forth in Section 2.01 to a maximum of fifty (50%) percent when the loan was fully paid. The plaintiff testified she made payments on said car loan herself totaling $4,024.31. However, she could not continue to make the car loan payments and subsequently the car was repossessed by the lending institution who held a lien on it for the aforementioned loan of $7,800.00.
Some of the terms of the Co-Ownership Agreement (Exhibit A) appear to conflict with one another. Section 1.04 states that the property shall be held in the individual names of the parties as tenants-in-common. It then goes on to say that the Investor (defendant) shall have an individual one-half (50%) percent interest in the property. However, it does not mention what the share of the Owner-Occupant (plaintiff) will be. Also, Section 2.02(a)(1) of the Agreement appears in conflict with Section 2.03. Section 2.02(a)(1) states that the parties shall pay according to their respective ownership interests in the principal and interest due on the mortgage. Section 2.03(a) discusses the Owner Occupant (plaintiff) paying rent of $750.00 per month to the Investor (defendant) for the right to remain in exclusive possession of the subject condominium. Subsections (c), (d) and (e) of Section 2.03 discusses the Owner-Occupant's right to sublet said condominium. The plaintiff testified that the parties wanted to provide for the contingency that they might separate and they wanted to be sure if they did that they could afford to keep the condominium so that their daughter would have a nice home to grow up in. Thus they agreed according to the plaintiff that if the defendant moved out he would have to pay approximately $500.00 per month for an apartment. Adding that figure to the monthly mortgage payment for the said condominium CT Page 12237 of approximately $1000.00 monthly, the total was $1500.00 in shelter costs per month for all parties. The plaintiff testified she and Mr. Smith agreed to pay this sum equally each month so that each paid $750.00 for shelter costs. From that sum the condominium mortgage would be paid as well as the defendant's rent. The defendant testified that the rent of $750.00 per month due him under the aforementioned section did not have anything to do with his shelter expenses. The defendant testified that the plaintiff was to pay him $750.00 per month rent if he vacated the premises because she would then be enjoying the condominium exclusively.
The subject condominium is now under a judgment of foreclosure by sale. John Paulishen, a real estate appraiser, testified that he appraised the subject property on January 13, 1995 and found the fair market value to be $82,000.00. He stated he has not seen the property since then and he has no idea if the value has changed. The foreclosure sale of the properly is scheduled for December 2, 1995. According to the plaintiff the condominium was purchased for $118,000.00 in 1987. Presently $88,000.00 is due on the principal of the mortgage plus $17,000.00 for late payments, fees, interest, attorney's fees and foreclosure costs, for a total due of $105,000.00.
The plaintiff testified that there was a foreclosure started in 1991 against the subject condominium. She stated she sold an insurance policy and used those proceeds to bring the then condominium mortgage current and terminate the foreclosure. She testified she paid between $8,000.00 and $9,000.00 for that purpose. The foreclosure was then withdrawn in March 1992.
Attorney John Turner testified in this trial. He stated he represented the plaintiff at the closing of the subject condominium and in drawing up the Co-Ownership Agreement between the parties. He stated that he never represented the defendant and specifically did not represent him in the closing of the condominium or in the drafting of the Co-Ownership Agreement. He stated that the Agreement was drawn up with the intent that the plaintiff would have exclusive possession of the subject condominium if she wished. (Exhibit A, Section B, Page 1.) With that intent, Section 2.03(a) was written into the Co-Ownership Agreement. Under the terms of that section the plaintiff would pay to the defendant $750.00 monthly rent if she occupied the condominium exclusively and the defendant would use that sum to pay the monthly mortgage. The difference between $750.00 and the CT Page 12238 monthly mortgage of approximately $1020.00 would be paid by the defendant. Attorney Turner testified that the Co-Ownership Agreement intended that if the parties lived together in the condominium then each would pay one-half of the monthly mortgage and living expenses. The plaintiff testified likewise. However, the defendant testified and claimed that the plaintiff owed him $750.00 monthly rent for each month since August 30, 1989 when he vacated the premises. He filed a counterclaim and claims the plaintiff owes him $54,000.00 in back rent. Under the facts of this case that claim is ludicrous.
Attorney Turner also testified that the plaintiff and the defendant had a fifty (50%) percent ownership in the legal interest in the condominium. However, as to the equitable ownership, he testified the plaintiff owned seventy-four (74%) percent and the defendant owned twenty-six (26%) percent as set forth in Section 2.01 of the Co-Ownership Agreement.
The plaintiff testified that the defendant owed her $28,528.85 relative to expenses she paid for the subject condominium and for which she is due reimbursement from him. That amount of $28,528.85 is arrived at as follows:
 1. Car payments made by plaintiff on behalf of the defendant $ 4,024.31
 2. Condominium charges the plaintiff paid between 2/2/88 and 3/6/90 ($945.00) and for which the defendant owes one-half $ 472.50
 3. Condominium charges the plaintiff paid between 1/1/89 and 10/1/95 ($9,196.45) and for which the defendant owes one-half $ 4,598.22
 4. Gas bills for the condominium for the period 1/16/88 to 8/19/89, totalling $622.85 and for which the defendant owes one-half $ 311.42
 5. Gas bill due when the defendant vacated the premises ($521.74) and for which the defendant owes one-half $ 260.87 CT Page 12239
 6. Attorney's fees for 1991 foreclosure ($1,500.00) and for which the defendant owes one-half $ 750.00
 7. Condominium mortgage payments the plaintiff made with her own funds between 2/1/88 and 8/1/89 ($9,531.63) and for which the defendant owes one-half $ 4,765.81
 8. Condominium mortgage payments made by the plaintiff with her own funds for the period between 9/5/89 and 9/10/93 ($26,691.44) and for which the defendant owes one-half $13,345.72 ---------- $28,528.85
On the third day of trial the plaintiff filed a motion to amend her complaint. The proposed amended complaint contained thirteen counts including counts claiming a breach of contract, reformation of a contract, breach of oral agreement, breach of a second oral agreement relative to household expenses, and claims for a constructive trust. The defense counsel objected to the filing of this amended complaint. The court sustained the objection and did not allow the plaintiff to amend her complaint at that late date. Up to that point this case, which was filed on September 26, 1990, this matter was a straight partition action. The court felt that it would have been grossly unfair to the defendant to allow the plaintiff to amend her complaint in the way she requested in the middle of trial. All of the claims totalling $28,528.85 previously described herein relate to theories of law propounded in the aforementioned amended complaint and the court makes no findings on those claims except as to the car payments and attorney's fees for the 1991 foreclosure action as hereinafter set forth. Those claims were not part of the claims in the complaint for partition under which this trial proceeded.
Attorney Turner testified that his firm had previously represented the plaintiff in this matter. He stated when the firm's bill for legal services relative to this matter reached $4500.00 they stopped keeping records of the hours the firm worked on this case. He stated that to date the plaintiff had paid the sum of $2000.00, leaving a balance due of $2500.00. He testified his firm billed their hours at a rate of $125.00 per CT Page 12240 hour in this case.
In the plaintiff's complaint she seeks:
(1) Partition of this real estate, according to the respective rights of the Co-Owners;
(2) If a sale would better promote the interests of the Co-Owners, then a sale of the premises and a division of the proceeds, after the payment of the expenses of sale, between the parties according to their respective rights in the real estate;
(3) The appointment of a committee to make such a sale;
(4) Money damages;
(5) Reasonable attorney's fees per the Co-Ownership Agreement dated November 20, 1987, and/or as may otherwise be permitted under existing law;
(6) Such other relief as in law and equity may obtain.
The defendant's attorney has represented to the court that the defendant does not object to a partition of this property.
Connecticut General Statute § 52-495 reads as follows:
 Partition of joint and common estates. Courts having jurisdiction of actions for equitable relief may, upon the complaint of any person interested, order partition of any real property held in joint tenancy, tenancy in common, coparcenary or by tenants in tail. The court may appoint a committee to partition any such property. Any decrees partitioning entailed estates shall bind the parties and all persons who thereafter claim title to the property as heirs of their bodies.
The right to partition is founded on the principle that no person can be compelled to remain the owner with another of real property, even if the party seeking partition willingly entered into the joint ownership. Wilcox v. Willard Shopping CenterAssociates, 208 Conn. 318, 325 (1988). In those cases where the court finds that a sale of the property would better promote the interests of the owners, the court may order such a sale. General Statutes § 52-500. Id.
CT Page 12241
After hearing the evidence the court finds that the plaintiff has sustained her burden of proof and orders a partition of the condominium unit owned by both parties as tenants-in-common and which is known as Unit B6B of Building B of The Laurels Condominium (#1) Inc., and located at 163 Hightop Circle, Hamden, Connecticut. The court orders that the defendant Isaac L. Smith shall convey his interest both legal and equitable in and to said premises to the plaintiff Donna L. Wright by quitclaim deed on or before November 25, 1995. If the defendant fails to provide a quitclaim deed to the plaintiff as aforesaid then title to the subject premises shall vest in the plaintiff by operation of law in accordance with Connecticut General Statutes §§ 52-22 and52-497.
The defendant did not sustain his burden of proof on his four special defenses nor did he sustain his burden of proof on his counterclaim.
The court ordered the partition in this case because the plaintiff paid between $8000.00 and $9000.00 to redeem the property when the property was initially brought under foreclosure in 1991, and which included $1,500.00 in attorney's fees, and further because the plaintiff paid $4,024.31 in car payments on behalf of Mr. Smith as stated hereinbefore. Those foreclosure proceedings terminated in March 1992 with the aforesaid payment. The plaintiff's remaining claims as set forth hereinbefore were not taken into consideration by the court in reaching the conclusion it did in this matter.
The court also orders the defendant to pay to the plaintiff the sum of $4500.00 as reimbursement for legal fees she incurred in this matter under Section 7.14 of the Co- Ownership Agreement signed by the parties.
Judgment may enter accordingly.
William J. Sullivan, Judge