# MARIA FERNANDES *v.* EYVIND RODRIGUEZ ET AL.
## (AC 17646)

Lavery, Hennessy and Dupont, Js.

Argued December 10, 1998—officially released August 10, 1999

*Meredith E. Russell,* for the appellant (named defendant).

*Lois J. Lawrence,* for the appellee (plaintiff).

*Opinion*

DUPONT, J. This is an appeal from a judgment of partition of real estate, in which the primary issue is whether the trial court could properly order the relief of a payment of money to the named defendant[1] by the plaintiff and order the defendant to execute and deliver to the plaintiff a quitclaim deed to the subject premises. The defendant claims that the trial court had no statutory authority[2] to render such a judgment because the court was limited to rendering a judgment ordering either partition in kind or a sale of the real estate. We hold that the trial court could properly render a judgment in this partition case that required the defendant to execute a quitclaim deed conveying the property to the plaintiff and the plaintiff to pay money damages to the defendant.

The plaintiff alleged in her complaint that she and the defendant hold title to certain real estate as joint tenants and that G.E. Capital Mortgage Services, Inc., has a thirty year mortgage on the real estate in the original amount of $36,000. The plaintiff sought a partition of the real estate or "[i]f a sale would better promote the interests of the coowners, then a sale of the premises and a division of the proceeds, after the payment of the expenses of the sale, between the parties

---

[1] The defendants are Eyvind Rodriguez, the plaintiff's joint tenant in the property in question, and G.E. Capital Mortgage Services, Inc., the mortgagee of the property. The mortgagee neither filed an appearance nor participated in the trial and is not involved in this appeal. We refer in this opinion to Rodriguez as the defendant.

[2] General Statutes § 52-495 provides in relevant part: "Courts having jurisdiction of actions for equitable relief may . . . order partition of any real property held in joint tenancy . . . ."

General Statutes § 52-500 (a) provides in relevant part: "Any court of equitable jurisdiction may . . . order the sale of any property, real or personal, owned by two or more persons, when, in the opinion of the court, a sale will better promote the interests of the owners."

according to their respective rights in the real estate." In his answer, the defendant admitted that there was a mortgage[3] and agreed to the plaintiff's claims for relief, stating that "the defendant agrees to a partition or sale of said property." The complaint does not allege nor does the record indicate whether the defendant signed a promissory note in connection with his execution of the mortgage deed.

The defendant counterclaimed, alleging that the plaintiff was living rent free in one of the property's three apartments, and that the plaintiff kept the net rental income of the remaining two apartments. He sought a money judgment in the amount of one half of the net rental income and one half of what should have been the rental of the apartment in which the plaintiff lived.

Certain facts are undisputed by the parties or were found by the trial court. The real estate was purchased by the parties as an investment in July, 1994, for $45,900. The parties intended to live together in one of the three apartments of the house located on the premises. The trial court found that the amount of the down payment plus closing costs equalled $14,892, and that the defendant's net contribution to the closing costs and down payment was $1000.[4] The court further found that the rental value of the apartment in which the plaintiff was living was $500, that the plaintiff kept detailed records of rents and expenses from the date of purchase to the date of the trial that showed a net profit for that period of $1556, that the defendant contributed little or nothing by way of repairs or management or upkeep of the

---

[3] The mortgage deed was not introduced as an exhibit.

[4] According to a statement required by the federal Department of Housing and Urban Development (HUD) that was introduced as an exhibit, the closing costs were $11,162.46. Whether the closing costs were accurately stated by the trial court, however, does not change the amount of the defendant's contribution to the payment of them.

building over the years, that the plaintiff did extensive clean up and repairs and has managed the property since the purchase, and that, of the net profit of $1556, the plaintiff had paid the defendant $479. Because the trial court found that the defendant could have lived in the apartment where the plaintiff resided for a three year period, the court concluded he was not entitled to be paid anything for the rental value of that apartment. The court stated that it did not find the defendant's testimony credible and that it believed the testimony of the plaintiff.

The trial court, after making its findings, determined that the defendant should recover $1077 as his net share of the rental proceeds, be reimbursed the $1000 he paid toward the closing costs and receive 10 percent of the equity in the property. The trial court found 10 percent of the equity to be more than a fair share for the defendant because the $1000 paid toward the closing expenses was less than 10 percent of the total down payment and the closing expenses.[5] In determining the amount of equity, the court found the value of the property to be $61,000 and the mortgage balance to be $25,282.40.[6] The trial court concluded, on the basis of the facts found, that the defendant's interest in the real estate was minimal and that, therefore, the defendant was not entitled to the remedy of a sale of the property. The trial court did not discuss partition in kind as a remedy. The court's judgment was that the plaintiff pay the defendant $4605 and that the defendant execute and deliver to the plaintiff a quitclaim deed relinquishing all his right, title and interest in the property.

The defendant claims that the trial court (1) exceeded its authority in ordering a partition by payment of

---

[5] The HUD statement indicates that the down payment was $500.

[6] The defendant does not dispute the amount of the fair market value of the real estate or the amount of the mortgage balance.

money, (2) improperly found certain material facts and (3) abused its discretion in accepting the opinion testimony of the plaintiff's real estate appraiser.

This is the only appellate case in Connecticut of which we or the parties are aware in which the relief obtained in a partition action was solely the payment of money in exchange for a conveyance of title. In only one case was an issue raised similar to the issue here. In *Geib* v. *McKinney*, 224 Conn. 219, 229–30, 617 A.2d 1377 (1992), the defendants argued that because the plaintiff had only a minimal interest in the subject real estate, a partition by sale would be an improper remedy in a partition action. That argument was not addressed, however, because the Supreme Court upheld the trial court's reasonable finding that the plaintiff had more than a minimal interest. Because the plaintiff had more than a minimal interest, the court upheld the trial court's order of a partition by sale.

We look to §§ 52-495 and 52-500 and cases decided pursuant to those statutes for guidance. There are conflicting cases that provide clues as to whether a trial court has such power in an action for partition. Some cases contain language indicating that a court is limited in partition actions to rendering a judgment of either partition in kind or partition by sale of the real estate. See *Wilcox* v. *Willard Shopping Center Associates*, 208 Conn. 318, 326, 544 A.2d 1207 (1988); *Johnson* v. *Olmsted*, 49 Conn. 509, 517 (1882). *Johnson* is a frequently quoted case in which the court stated that there are only two modes of relief in statutory actions for partition and that there is an undeniable right to obtain relief by use of the less injurious of the two modes. The case also states that the right of partition existed at common law and that the statutes providing for the cause of action recognize that right, leaving to be resolved by a court only the question of how partition can best be effectuated.

Another case recognizes that remedies other than sale or partition in kind were available in equity in partition actions. *Penfield* v. *Jarvis*, 175 Conn. 463, 467 n.4, 399 A.2d 1280 (1978). An action for partition ends with, and was intended to end with, a severance of undivided possession or a severance of title. The equitable procedure for partition of property included the ability to compel the execution of a conveyance, to decree pecuniary compensation for owelty or equality of partition, to compel an accounting and to compel discovery necessary to prove title. Id.

All of the cases previously cited involve situations in which all of the owners had more than minimal interests. The defendant argues that even if the relief afforded by the trial court in the present case is permissible where an owner has a minimal interest, his interest was more than minimal. Basically, the defendant contends that the trial court improperly found his interest to be minimal because it did not take the mortgage deed that he executed into account in valuing his interest. The trial court did not discuss the mortgage, other than to acknowledge it in establishing the equity of the parties in the real estate. The defendant did not introduce a promissory note into evidence and the record does not reveal whether he in fact signed one. The closing statement describes the defendant as a "borrower" and the mortgagee as a "lender." The remedy of a mortgagee for nonpayment is either at law on a promissory note if the mortgagor has signed a note, or in equity for foreclosure of the mortgage. *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 260, 708 A.2d 1378 (1998). Both remedies, although separate and distinct causes of action, may be pursued in a foreclosure suit. *Hartford National Bank & Trust Co.* v. *Kotkin*, 185 Conn. 579, 581, 441 A.2d 593 (1981). Whether the defendant might ever be required to make payment to the mortgagee if the plaintiff should default in payment was not an issue

before the trial court.[7] Also, there was no evidence that the defendant had signed a promissory note.

An action for partition at common law was equitable in nature, requiring courts to examine all relevant circumstances. Those equitable considerations are whether partition should be in kind or by sale, by adjusting unequal shares through payments to an owner or by giving an accounting. 7 R. Powell, Real Property (1977) § 607 (3). Because the remedy to be chosen by a court relates, in part, to a determination of whether one of the owners has a minimal interest, a trial court may properly consider the percentage of ownership of each. That question is different from what an appropriate distribution of the proceeds would be after a partition by sale has occurred. See *Geib* v. *McKinney*, supra, 224 Conn. 229–30.

It is not necessarily true that each tenant in common or joint tenant is entitled to an equal share in the real estate. *Levay* v. *Levay*, 137 Conn. 92, 96, 75 A.2d 400 (1950). In *Levay*, the defendant bid on the property, in which she had an undivided one-half interest, at a sale ordered in response to the plaintiff's action for partition. "The fund received from the sale will be the equivalent of the property . . . . Although each party was the owner of an undivided one-half interest in the property, it does not follow that he or she will necessarily be entitled to equal shares of the moneys obtained from the sale. Equities must be considered and, if established, must be liquidated before distribution is ordered." (Citations omitted.) Id., 95–96.

Here, the trial court found that the evidence introduced by the plaintiff proved that the defendant's interest was minimal[8] and concluded that a sale would not

---

[7] Usually, a mortgage which had applied to the undivided interest of both owners shifts to the interest assigned to an owner by the partition action. 7 R. Powell, Real Property (1977) § 607 (4).

[8] The plaintiff introduced her income tax returns, bills and statements of profit and loss.

be equitable. The defendant claims that the court could not end its inquiry with the conclusion that a sale was not an appropriate remedy, but had to determine also whether a partition in kind was warranted.[9]

A partition in kind presents the same inequities as a sale when a coowner has only a minimal interest. A partition in kind presents other problems in this case as well. The judgment of partition by a court must take into account the particular situation of the parties, which includes the physical attributes of the real estate and the interests of the owners. *Rice* v. *Dowling*, 23 Conn. App. 460, 466–67, 581 A.2d 1061, cert. denied, 217 Conn. 805, 584 A.2d 1190 (1990). To determine the appropriate relief, the consequences of the relief and whether the relief is equitable must be considered. Id. In this case, the plaintiff had obtained an ex parte restraining order against the defendant, preventing him from entering the real estate, which order the defendant successfully vacated shortly thereafter. It is unlikely that the parties could cooperate peacefully in managing the property, even if a partition in kind, giving him a 10 percent interest could be accomplished. See *Wilcox* v. *Willard Shopping Center Associates*, supra, 208 Conn. 323–24. Because of the minimal interest of the defendant, coupled with the other factors here, partition in kind was not appropriate.

This is not a case in which partition in kind produces minor inequities that can be cured by an award of money damages. 7 R. Powell, supra, § 607 (4); see also *Filipetti* v. *Filipetti*, 2 Conn. App. 456, 479 A.2d 1229, cert. denied, 194 Conn. 804, 482 A.2d 709 (1984). Here, the inequities are not minor. We conclude that the trial court need not have addressed whether partition in

[9] The defendant does not argue that a partition in kind would be more appropriate than a partition by sale, and we need not decide the issue of whether the trial court should have compared the equities as between the two. *Geib* v. *McKinney*, supra, 224 Conn. 228 n.8.

kind was warranted because, by implication, once the interest of the defendant was found to be minimal, that remedy would be inequitable.

The question remaining is whether the remedy ordered by the trial court was proper, given its conclusion that the defendant's interest was minimal. "The right to partition has long been regarded as an absolute right, and the difficulty involved in partitioning property and the inconvenience to other tenants are not grounds for denying the remedy. No person can be compelled to remain the owner with another of real estate, not even if he becomes such by his own act; every owner is entitled to the fullest enjoyment of his property, and that can come only through an ownership free from dictation by others as to the manner in which it may be exercised. Therefore the law afforded to every owner with another relief by way of partition . . . ." (Internal quotation marks omitted.) *Geib* v. *McKinney*, supra, 224 Conn. 224.

In a situation where neither partition in kind or a sale is equitable because a coowner has only a minimal interest in the real estate, the trial court should be permitted to fashion an alternative equitable remedy because no owner can be compelled to continue ownership with another. "The determination of what equity requires in a particular case . . . is a matter for the discretion of the trial court." *Kakalik* v. *Bernardo*, 184 Conn. 386, 395, 439 A.2d 1016 (1981).

We recognize that if a sale is ordered in a partition action where one owner has a substantially greater interest than another, either could become the sole owner by making the highest bid at the sale. To mandate that a trial court, however, after concluding that a partition in kind is not warranted, must always order a partition by sale even if it concludes that partition by sale is also not equitable, would provide the court with a

Hobson's choice.[10] Here, the trial court found that one owner had only a minimal interest in the property and that the other had a substantial interest and resided on the property. The court then concluded that a partition by sale was inequitable.

The right to partition was established by the common law, and is fortified by the use of equitable principles and by the statutes. The statutes governing partition are remedial in nature and should be liberally construed. *Borzencki* v. *Estate of Stakum*, 195 Conn. 368, 373, 489 A.2d 341 (1985). In essence, a complaint for partition seeks "no fault" relief. Once the cotenants or joint tenants determine they cannot coexist, the relief of severance of the ownership must be afforded, and the trial court must fashion an appropriate equitable remedy, if partition by sale or in kind would be inequitable. We do not disturb the black letter law that states that *usually* no remedy other than a partition by sale or in kind can be afforded in a partition action. We simply provide an exception for the limited situations such as the one of the present case, where one party's interest is very minimal and the other resides on the premises.

The remaining two claims of the defendant relate to his counterclaim for one half of the rental value of the plaintiff's apartment and to his claim that his interest in the real estate was not minimal. We conclude, on the basis of the exhibits and the transcript, that the trial court's finding that the defendant's contribution to the purchase price and renovation of the premises was minimal should not be disturbed because the evidence supports the finding of fact.

The finding of the trial court that the defendant could have lived in an apartment on the premises led to its

---

[10] In an action for partition, the option of dismissing the case may not be available because the remedy is "compulsory." *Penfield* v. *Jarvis*, supra, 175 Conn. 466.

conclusion that the defendant was not entitled to one half of the rental value of that apartment and it is that finding and conclusion that the defendant vigorously attacks as improper. We agree with the defendant. The plaintiff testified that in September, 1995, she obtained an ex parte restraining order to prevent the defendant from entering the premises. She testified that she called the police in September, 1995, because of an argument the two had about his placement of a dead bolt on the apartment door. It appears from the transcript that at the time the police were called, the restraining order had been vacated. Given the plaintiff's testimony, even if the defendant's testimony that the police officer told him to "get out and never come back" is not credited, we cannot conclude that the trial court's finding that the defendant could have lived in the apartment was based on the evidence. Accordingly, we must remand the case so that the trial court can establish the amount of money the plaintiff must pay the defendant for one half of the rental value of the apartment in which the plaintiff lived.

The fair rental value of the premises was found by the trial court to be $500 per month. The defendant claims that there was no basis for the finding. The trial court relied on the testimony of a real estate appraiser witness called by the plaintiff and we will not disturb the court's finding. The defendant did not object to the testimony of the plaintiff's expert witness, and we conclude that the trial court did not abuse its discretion in accepting the witness' opinion.

The judgment is reversed only as to the amount to be paid to the defendant by the plaintiff and the case is remanded for further proceedings to determine the amount, in addition to the $4605 award, due the defendant from the plaintiff for one half of the fair rental value of the apartment in which the plaintiff resided

from the time she began residency to the date judgment is rendered.

In this opinion HENNESSY, J., concurred.

LAVERY, J., dissenting. I respectfully disagree with the majority's conclusion that, in a partition action, General Statutes §§ 52-495 and 52-500 authorize a trial court to order a remedy other than partition in kind or partition by sale of the real estate. The text of §§ 52-495 and 52-500, as well as precedent from our Supreme Court, establish that the trial court did not have the authority to order the defendant to execute a quitclaim deed to the plaintiff in exchange for a payment of money.

Section § 52-495 confers a right of partition to any person holding real property as a joint tenant, tenant in common, coparcener or tenant in tail. In those cases where the court finds that a sale of the property would better promote the interests of the owners, the court may order such a sale. General Statutes § 52-500; *Delfino* v. *Vealencis*, 181 Conn. 533, 536, 436 A.2d 27 (1980). The text of §§ 52-495 and 52-500 limits the remedies in a partition action to either partition in kind or partition by sale of the real estate. In *Wilcox* v. *Willard Shopping Center Associates*, 208 Conn. 318, 326, 544 A.2d 1207 (1988), our Supreme Court held that "a court is limited to rendering a judgment of either partition in kind or by sale of the real property; *Klaus* v. *Klaus*, 143 Conn. 218, 221, 121 A.2d 283 (1956); thus terminating the ownership relationship between the parties." See *Johnson* v. *Olmsted*, 49 Conn. 509, 517 (1882). The legislature has not amended the text of §§ 52-495 and 52-500 since our Supreme Court's decision in *Wilcox*.

I respectfully submit that the majority's reliance on *Geib* v. *McKinney*, 224 Conn. 219, 227–30, 617 A.2d 1377 (1992), is misplaced. In *Geib*, our Supreme Court held

that the trial court did not abuse its discretion by ordering a partition by sale. Id., 229. The court did not hold that if the plaintiff held less than a minimal interest in the real estate, §§ 52-495 and 52-500 authorized the trial court to order a remedy other than partition in kind or partition by sale. *Geib* did not contemplate a remedy other than partition in kind or partition by sale, nor did it overrule the decision in *Wilcox* or point to any amendment to §§ 52-495 and 52-500 that authorizes additional remedies.

In the present case, the trial court held that the plaintiff was not entitled to the remedy of partition by sale because, although he was a joint tenant, his equitable interest in the property was minimal. "Ordinarily, in a partition by sale, the claims of the parties as to their interests in the property are considered in connection with the distribution of the proceeds." *Gaer Bros., Inc.* v. *Mott*, 147 Conn. 411, 415, 161 A.2d 782 (1960). "In a partition sale, even where each party may be the owner of an individual one-half interest in the property, it does not necessarily follow that he or she will be entitled to equal shares of the moneys obtained from the sale as the '[e]quities must be considered and, if established, must be liquidated before distribution is ordered. *Rentz* v. *Eckert*, 74 Conn. 11, 16, 49 A. 203 [1901].' *Levay* v. *Levay*, 137 Conn. 92, 96, 75 A.2d 400 (1950) . . . ." (Citation omitted.) *Hackett* v. *Hackett*, 42 Conn. Sup. 36, 40, 598 A.2d 1112 (1990), aff'd, 26 Conn. App. 149, 598 A.2d 1103 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992). The trial court should have ordered a partition by sale and distributed the proceeds of the sale in accordance with the equitable interest of each party.

Assuming arguendo that §§ 52-495 and 52-500 authorize the trial court to order a remedy other than partition in kind or partition by sale when a party holds only a minimal interest in the real estate, I respectfully dis-

agree with the majority's conclusion that the trial court properly determined that the defendant held only a minimal interest. The trial court concluded that the defendant held a minimal interest in the property because the plaintiff contributed a substantial share of the closing costs, managed the property and performed cleaning and repair services for several weeks immediately following the date of purchase. A careful examination of each of those factors in light of the entire record, in conjunction with the trial court's failure to consider the defendant's obligation on the mortgage that encumbered the property, establish that its decision was improper.

The first factor that the trial court considered in reaching its conclusion was the amount each party contributed to the closing. The trial court found that the deposit and closing costs totaled $14,892. The plaintiff testified that the closing costs, deposit and water bill exceeded $12,000, but fell within the range of $13,700, and her third exhibit fixed these costs at $13,748.53. The Housing and Urban Development (HUD) settlement statement, which the plaintiff introduced as her second exhibit, establishes that the closing costs, deposit and water bill totalled $12,431.23. It is undisputed that the defendant contributed $4500 to the closing costs, and that at times subsequent to the closing the plaintiff loaned sums to the defendant.

The second factor that the trial court considered in reaching its conclusion was that the plaintiff managed the property. Although the record establishes that the plaintiff managed the property, it also discloses that she resided in the apartment without paying any rent. The plaintiff further testified that she collected $36,253 in rental income and expended $35,176 of that sum for various expenses associated with the property. The memorandum of decision does not disclose that she personally expended any funds for maintenance and repair. The third factor the trial court considered was

the cleaning and repair services that the plaintiff rendered during the three month period immediately following the purchase of the property. The trial court credited the plaintiff's testimony, and the plaintiff testified that the defendant worked approximately five hours per day during that period.[1]

Furthermore, in reaching its conclusion that the defendant held only a minimal interest in the property, the trial court did not consider the defendant's obligation on the mortgage that encumbered the property. The third paragraph of the plaintiff's complaint provides in part: "G.E. Capital Mortgage Services, Inc., has a mortgage on this real estate which mortgage is [in] the original amount of $36,000 . . . ." The mortgage deed, which the plaintiff introduced into evidence, discloses that the plaintiff and defendant held title to the real estate as joint tenants with the right of survivorship. The plaintiff's testimony suggests that the defendant was obligated on the mortgage.[2] The HUD settlement statement lists the plaintiff

---

[1] On direct examination, the plaintiff testified:

"Q. And, by comparison what contribution in terms of man hours did [the defendant] make during those first three months?

"A. He would average about five hours a day and he was tinkering. We argued about this. He would go up to the third floor and spot painted."

The plaintiff later offered conflicting testimony, claiming that the defendant did not perform any work during the last two months of this period:

"Q. Now, during this three month period of time, you said a month, it took a month to get the third floor apartment habitable; is that the first one rented?

"A. I do not know if it was the second or third.

"Q. Okay. But, your first tenant came in after about a month?

"A. Right.

"Q. In the two months that followed that what role if any did [the defendant] play to get the remainder of the house habitable?

"A. Nothing."

[2] On direct examination, the plaintiff testified:

"Q. When you found this property [the defendant] agreed to enter into an investment with you?

"A. Initially my dad was going to sign for me, but he turned terminally ill and then he passed away in May. Then [the defendant] and I spoke and he said he would be willing to sign and come up with half the money.

and defendant as borrowers and G.E. Capital Mortgage Services, Inc., as the lender, and the defendant signed the HUD statement in his capacity as a borrower. A 1996 mortgage interest statement, which the plaintiff introduced as an exhibit, also lists the plaintiff and defendant as borrowers and G.E. Capital Mortgage Services, Inc., as the lender. The plaintiff provided the trial court with ample evidence that the defendant was obligated on the mortgage. Despite this evidence, the trial court failed to consider the defendant's obligation on the mortgage in reaching its conclusion that the defendant held only a minimal interest in the property.

The defendant, who in addition to contributing $4500 to the closing costs was also liable on a $36,000 mortgage on a $45,000 purchase, cannot be considered an investor with a minimum interest since the plaintiff could not have participated in the purchase without him. See footnote 2 of this opinion. After considering the three previously mentioned factors in light of the entire record, as well as the trial court's failure to consider the defendant's obligation on the mortgage, I would conclude that the trial court improperly determined that the defendant held only a minimal interest in the property.

"Q. Okay. Now, you negotiated the deal and eventually there was a closing?
"A. Right."